COCHRAN v. THE PEOPLE'S RAILWAY COMPANY, *Appellant.*

Division Two, December 31, 1892.

1. **Contract:** PENALTY: LIQUIDATED DAMAGES. A clause in a building contract, that, in case of failure to complete the work at the time specified, the builder would pay the owner $50 for every day the building was delayed after that time, will be construed as a penalty and not as liquidated damages, where it appears that the sum so agreed on is unreasonable and out of proportion to the probable damages.

2. **Building Contract:** DELAY IN CONSTRUCTION: DAMAGES. Where the builder contracts with the knowledge that the building was designed for a particular purpose, he will be liable under such penal clause for the actual rental value of the building to the owner as adapted to its particular use and not merely for its rental value for general business purposes.

3. **Practice:** INSTRUCTIONS: ESTOPPEL. An instruction, given at defendant's request in an action by the builder for the contract price, authorizing the jury to assess "the damages at a sum which will fairly and justly compensate the defendant for the damages sustained by it by the loss of the use of the building during the delay," will not estop the defendant from complaining of the error of the court in refusing to permit it to show under the penal clause of the contract the actual rental value of the building to defendant as applied to its particular use.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*G. A. Finkelnburg* for appellant.

(1) The court erred in holding that the stipulation on the subject of damages for delay, contained in the written contract between the parties, should not be enforced. *Worrell v. McClinagham,* 5 Strob. 115; *Ward v. Building Co.,* 125 N. Y. 230; *Railroad v. Rust,* 19 Fed. Rep. 239; *Hall v. Crowley,* 15 Allen, 304; *Wolf v. Railroad,* 64 Iowa, 380; *Fletcher v. Dyche,* 2 T. R. 32; *Crux v. Aldred,* 14 Week. Reports, 956; 1 Sedgwick on Damages [8 Ed.] sec. 419; *Fruin v. Railroad,* 89 Mo. 397; *Morse v. Rathburn,* 42 Mo. 594. (2) The court erred in its instructions on the measure of damages for delays in completon of buildings. See cases cited, *supra.* (3) The court erred in confining defendant's evidence to the general rental value of the building, without reference to the particular use for which defendant had caused it to be built, and without reference to the value which it had to defendant.

*C. H. Chapin* and *Andrew Mackay, Jr.,* for respondent.

(1) The court did not err in holding that the stipulation on the subject of damages for delay contained in the written contract between the parties to this suit should be considered a penalty and not liquidated damages, and trying the case on that theory. 1 Sedgwick on Damages [8 Ed.] sec. 407, p. 584; *Brennan v. Clark,* 29 Neb. 386; *Gower v. Saltmarsh,* 11 Mo. 271; *Stearns v Barrett,* 1 Pick. 443; *Muldoon v. Lynch,* 66 Cal. 536; *Colwell v. Lawrence,* 38 N. Y. 71; *Foley v. McKeegan,* 4 Iowa, 1; 1 Sedgwick on Damages [8 Ed.] p. 611, sec. 425, last part; *Hamilton v. Moore,* 33 Up. Can. Q. B. 529; *Farnham v. Ross,* 2 Hall (N. Y.), 167; *Clements v. Railroad,* 132 Pa. St. 445; *Walsh v.*

*McDonald*, 85 Va. 500; *Potter v. McPherson*, 61 Mo. 240; *Tayloe v. Sandiford*, 7 Wheat. (U. S.), 13; *Dennis v. Cummins*, 3 J. Cases, 297; *Shute v. Taylor*, 5 Met. (Mass.) 61. (2) The court committed no error in its instructions on the measure of damages for delays in the completion of the defendant's building. See cases cited *supra*.

GANTT, P. J.—This is a suit at law for a balance on a building contract. Plaintiff claimed $3,285 due him on a contract price of $17,785, for building defendant an office building for its cable railway in the city of St. Louis.

The defendant in its answer claimed certain deductions for omissions made by the architect, also damages by way of counter-claim for defective material and unskillful workmanship, and a counter-claim for a delay of sixty-five days in the completion of the building at the rate of $50 per day as "liquidated damages."

The contract contained this stipulation:

"And the party of the first part agrees to begin said work immediately, and push it so as to have it completed on or before the fifteenth day of December next ensuing. And the party of the first part agrees to pay to the party of the second part the sum of $50 per day for every day over the above specified time that the building shall be delayed from completion through the fault of the said party of the first part."

During a trial before a jury the court held this clause to be a mere penalty and announced that it would try the case upon that theory, and compelled the defendant to show actual damages, to which ruling and announcement defendant excepted. Evidence was then introduced by both parties on the subject of the actual damages sustained by defendant by the delay, and defendant was by the court confined to the general rental value of the building without considering its special

value or use to defendant or defendant's business, to which defendant likewise excepted. The court also refused an instruction asked by defendant to the effect that under the contract read in evidence defendant was entitled under its first counter-claim to $50 per day for every day which the jury might find from the evidence that the building was delayed from completion beyond the fifteenth day of December, 1889, through the fault of plaintiff; to which refusal defendant again excepted.

If the circuit court was wrong in its interpretation of the contract in this case, and the stipulation for $50 a day for each day the building was delayed was a legitimate ascertainment of the damages that defendant would suffer by the delay, and not a penalty provided against a breach of the contract, then the other question as to measure of damages will become immaterial, otherwise important.

In this case the amount fixed is denominated in the contract neither as "penalty" or "liquidated damages." The courts now generally agree that neither of these terms are conclusive in the construction to be placed on the agreement. To enable a court to determine whether the sum of $50 a day, which the contract provides plaintiff shall pay defendant, shall be regarded as liquidated damages, or as a penalty, must be gathered from the subject-matter of the contract, the language employed and the intention of the parties.

Various rules of interpretation have been adopted by the courts in their efforts to compensate the injured party for his loss, and at the same time avoid what they deem an unconscionable advantage over his adversary. The canons of construction applied by the courts are not arbitrary, nor has any respectable court assumed to deny to parties competent the right to make their own contracts. They have simply said that, reading

the whole contract with reference to its subject-matter and the circumstances of the parties, under one state of facts, the stipulation created merely a penalty for the faithful performance of the agreement; and, under other circumstances, that it was liquidated damage.

In *Morse v. Rathburn*, 42 Mo. 594, Judge WAGNER announced the rule in this state to be, "where the parties to a contract, in which the damages to be ascertained growing out of a breach are uncertain in amount, mutually agree that a certain sum shall be the damages in case of a failure to perform, in language plainly expressive of such agreement, and when the intention is plain and palpable, there is no law  *  *  * to justify the courts in giving the contract a different construction or saying that the parties meant something else.  *Where the sum is greatly disproportionate to either*, the actual or presumed damage, showing that one side was the victim of oppression, a court exercising equity powers would interfere."

The element of uncertainty, the fact that the damage was incapable of exact ascertainment, has generally inclined the courts to construe the sum agreed upon as liquidated damages.   Where, however, the amount stipulated to be paid by the defaulting party is disproportionate to the probable damage or to a readily ascertainable loss, the courts treat it as a penalty, in the nature of a security for performance.   Many adjudicated cases in England, Canada and the states of our Union uphold the right of parties to stipulate that, for delay in the performance of building contracts, the builder shall pay a certain amount per day or week for every day or week the completion of the contract is delayed beyond the time fixed.   1 Sedgwick on Damages [8 Ed.] sec. 419, and cases cited in note a.   An examination of these cases, however, confirms the

view that the amount so agreed upon as liquidated damages must not be unreasonable and out of proportion to the probable damages.

Applying to this case the ordinary tests, is it or not unreasonable as liquidated damages ?   Viewing it from the point of an investment, the capital was $18,000, and for sixty-five days this capital yielded no income. Allowing ten per cent.—a large interest on so large a a sum—and we find $325 would compensate for the use of the money as a loan or mere investment.   If we regard the testimony as to rental, the highest sum testified to by Mr. Green, the president of defendant, was $2,500 a year.   The loss in rental at this rate would be $451.38.   By the laws of compensation then, it would appear that defendant could not have reasonably suffered in actual damages the amount it claims under this clause of the contract.   At the rate stipulated the damages would have amounted in a year to a sum almost as large as the capital invested or total cost of the building.

We are constrained therefore to hold that this stipulation was intended as a penalty to compel the performance of this contract, and not an agreement for said sum as stipulated damages.   *Potter v. McPherson*, 61 Mo. 240.   This necessitates an examination into the ruling of the court that defendant could only recover the general rental value of this building and *excluding the evidence of its rental value to the defendants*.   Now it seems evident that a mere general rental would not compensate this defendant for the loss of the use of this office building, which at a great outlay it had contracted to have built in order that it might have conveniences and security in the prosecution of its business. In the first place, the witnesses all agree that no such buildings are generally erected for rent.   There is no demand for such.   Again this building was erected in

a portion of the city where rents are comparatively low; but being immediately adjoining defendant's power-house and on its line, affords it every facility it desires; but its very locality would depreciate its rental value to others.

Moreover its costly vaults, brass partitions, etc., would not commend it to the ordinary renter; but it possessed a peculiar value to defendant, and it was doubtles for this very reason the defendant had insisted upon the clause of $50 per day to insure to itself the advantage of such a building and the benefit of this particular contract, knowing the uncertainty of estimating the damages in the event of failure to complete it. And now when the builder has failed to carry out his contract and it becomes necessary to estimate the damages, to relegate the defendant to the ordinary rental value of this house to some one else and ignore its peculiar adaptability to the wants of its owner, who had designed it for its own business, would fall far short of that principle of compensation so earnestly commended by both judges and law writers.

Accordingly we think the defendant, under the peculiar circumstances of this case, was entitled to show what the rental value of this building, as projected, planned and actually constructed, was to the Peoples' Railway Company at the time it should have been and was finished, as against the contractor, who, with knowledge of the purposes for which it was designed, undertook and agreed to finish it by a certain date. *Clifford v. Richardson*, 18 Vt. 620; *Snell v. Cottingham*, 72 Ill. 161.

But the learned counsel for respondent insists that the instruction number 4, given at the instance of defendant, estops it from complaining of the action of the court. It is true that in that instruction the court authorized the jury to fix "the damages at a sum

that will fairly and justly compensate the defendant for the damages sustained by it by the loss of the use of the building during the period of delay." But this cannot be. The jury could not make a correct estimate without the evidence which was denied defendant. It must be remembered that a defendant occupies a different attitude from his adversary, the plaintiff. The plaintiff brings the action. If the ruling is adverse, he may take a non-suit. Not so with the defendant. He is in court without his consent. The court may make any number of rulings that he may deem erroneous, but he cannot abandon the case; he is in court and must remain till the cause is finished. He has a right to tender as many defenses as he has. If the court erroneously deny him one, he must avail himself as best he can of those remaining. He, however, advises the court and his adversary of his claim, and if he submits, as he is bound to do, to the ruling of the court, and tries his case in accordance with the judgment of the trial court, on what principle is he estopped from complaining of the action of the trial court and his adversary in forcing him to fight the battle upon ground selected by them and at a great disadvantage to him? We see no element of estoppel in such a case.

This case is a good example to test this practice. The defendant offered to show the actual damage to it by proving the rental value of this building to itself. This the court denied; compelled it to offer testimony only of its general rental value. When the case was closed, the defendant, as in duty bound, attempted to recover all the damages it could under the rule fixed by the court, and failed to get what it claims it suffered. Is it any answer to it now to say you obeyed the order of the court, submitted under protest, and, although you advised the court and your adversary of your

objection, you are estopped by so submitting. To our minds it is an illogical conclusion.

The defendant is not precluded from complaining that it was not permitted to show its actual damages to the jury. Had the jury had the benefit of that evidence, it is to be presumed defendant would have been, rewarded with a larger amount of damages. Certainly it is poor consolation to give an instruction properly declaring the law, after excluding the very evidence that made the instruction valuable to defendant. We think the court erred in restricting the proof of actual damages to the general rental value of the building.

The judgment is reversed, and the cause remanded for a new trial. All concur,