J. Blaine, Respondent, v. Huttig Sash & Door Co., A Corporation, Appellant.—105 S. W. (2d) 946.

St. Louis Court of Appeals.   Opinion filed May 4, 1937.

Motion for Rehearing Overruled June 15, 1937.

Writ for Certiorari Denied July 30, 1937.

*J. Edward Gregg* and *Robert L. Aronson* for respondent.

*William R. Schneider* for appellant.

872

HOSTETTER, P. J.—This is a suit begun on the 17th day of January, 1931, in the circuit court of the city of St. Louis, in which plaintiff sought to recover damages on account of personal injuries alleged to have been sustained by him as a result of horseplay indulged in by one of his fellow employees, both of whom were in the employ of the defendant corporation.

Plaintiff's amended petition (being the one on which the case was tried) alleged, in substance, that the defendant was engaged at all times mentioned in the business of manufacturing articles of wood at its plant in the city of St. Louis, Missouri; that his injuries were caused by the carelessness and negligence of the defendant corporation in harboring and keeping in its employ a workman by the name of Scheer; that on the 11th day of November, 1930, plaintiff, while engaged in his duties, was shoved, nudged and tickled by said Scheer and caused to swing or jump, and thereby come in contact with machinery and parts of the floor, which resulted in serious and permanent injuries; that plaintiff's fellow workman Scheer carelessly, negligently and frivolously tickled, nudged and shoved plaintiff, directly causing him to jump, swing and fall against machinery and the building and when the defendant corporation knew, or, by the exercise of ordinary care would have known that permitting said Scheer to engage in such action would be likely to cause plaintiff to be injured; that said Scheer was habitually negligent, careless and tricky, attempting practical joking, tickling and nudging among other workmen engaged there, particularly the plaintiff, and that said Scheer knew that plaintiff was particularly sensitive to such actions and likely to become frightened or excited by reason of such conduct and likely to become injured by reason thereof, and that defendant negligently and carelessly, with knowledge, or, means of knowledge, of the aforesaid facts, retained said Scheer in its employ and failed to remove him; that prior to the commencement of this suit plaintiff filed a claim on account of said

injuries with the Workmen's Compensation Commission of Missouri in due time, to wit: on the 17th day of December, 1930; that upon testimony being taken the said Commission found that plaintiff sustained injuries during the course of his employment but that said injuries did not arise out of his employment; that the said finding of the Commission is binding upon the plaintiff as far as workmen's compensation is concerned and is binding upon the circuit court to the extent that the Commission has adjudged that at the time in question the injury to plaintiff did not come with the provisions of the Workmen's Compensation Law.

After describing the nature of the alleged injuries, and charging that they were caused by the negligence of Scheer and the defendant, the petition closed with a prayer for $15,000 against the defendant. To this petition defendant filed a demurrer on the ground that the petition showed on its face that plaintiff's claim is properly a claim for the Workmen's Compensation Commission under the compensation law, and, further, that the petition showed on its face that plaintiff's claim, arising out of the facts alleged therein, has been adjudicated by the Missouri Workmen's Compensation Commission in a claim in which the parties and the facts were the same as set out in the petition and is *res adjudicata.*

The court overruled said demurrer and defendant then filed a motion to strike from the petition the clause relating to plaintiff filing a claim with the Workmen's Compensation Commission, on the ground that the matter contained in such paragraph is surplusage and mere legal conclusions and conflicts with other allegations in the petition and is prejudicial to defendant's right to a fair and impartial trial, which motion to strike was also overruled.

Defendant, after saving exceptions to the action of the court in overruling its demurrer and its motion to strike, filed its answer and plea in abatement, which consisted, first, of a general denial, followed by an allegation charging contributory negligence on the part of the plaintiff in indulging and participating in sportive acts and horseplay in the course of and in connection with his work for the defendant and, by way of plea in abatement, alleged that the matters and things sought to be adjudicated would only be properly and legally adjudicated by the Missouri Workmen's Compensation Commission and that the matters set out in the petition and sought to be adjudicated are *res adjudicata* for the reason that they have heretofore been adjudicated by the Workmen's Compensation Commission of Missouri, setting out the award of the Commission as follows:

"Award on Hearing.

Accident No. E-79851.

"Employee: J. Blaine.

"Employer: Huttig Sash & Door Company.

"Date of accident: November 11, 1930.

"Insurer: Self.

"Place and county of accident: St. Louis, Missouri.

"Date of hearing: January 14, 1931.

"The above parties having submitted their disagreement or claim for compensation for the above accident to the undersigned Referee of the Missouri Workmen's Compensation Commission, and after hearing the parties at issue, their representatives, witnesses and evidence, the undersigned hereby find in favor of the above employer and insurer and against the above employee and awards no compensation for the above accident.

"For the reason that employee's injuries are not the result of the accident arising out of and in the course of his employment within the meaning of the Compensation Act, while it happened in the course of his employment there is no showing that it arose out of any connection with the duties he had to perform.

"Given at the City of Jefferson, State of Missouri, this 16th day of January, 1931."

This was followed by an allegation that no appeal was taken from said award of said Commission and that the award thereby became the final adjudication on plaintiff's claim and that the same is now *res adjudicata*.

Thereupon plaintiff filed a motion to strike from defendant's answer and plea in abatement the allegations setting up that the court has no jurisdiction in this cause and the further allegations in relation to the cause being barred by the doctrine of *res adjudicata*, which motion the court sustained, leaving in the answer only a general denial and a plea of contributory negligence.

At the trial the testimony offered by plaintiff in general tended to sustain most of the allegations contained in his petition. There was also an admission in the record to the effect that both plaintiff and defendant were operating under the Missouri Workmen's Compensation Law at the time of the accident; that the Workmen's Compensation Law was applicable to both plaintiff and defendant at the time of the accident and that the defendant at the time regularly employed more than eleven employees earning less than $3600 annually.

It was also admitted in evidence that plaintiff had filed his claim before the Workmen's Compensation Commission and that his claim for compensation was denied by the award made by the Commission on the ground that, while the accident which resulted in in-

jury to plaintiff arose in the course of the employment it did not arise *out of* the employment.

At the close of the case the court refused to give defendant's proffered instruction in the nature of a demurrer to the evidence.

The jury returned a verdict in favor of the plaintiff for $8000 and plaintiff voluntarily remitted $500 and a judgment was entered for $7500. Defendant in due time filed its motion for a new trial, and the trial court overruled it conditionally, and required plaintiff to remit an additional amount of $1500, whereupon a new judgment was entered in favor of plaintiff for $6000 only, and defendant's motion for a new trial was, accordingly, overruled. Thereupon defendant in due time appealed and brings the cause to this court for review.

The plaintiff testified substantially as follows:

That he had been in the employ of the defendant corporation for ten or eleven years; that his duty was to keep the machinery in running order; that if a belt got loose the belt man had to take it up and that if a belt broke he had to fix it and put it back and keep the machinery in running order; that the machinery was run by electricity; that his work at defendant's plant was in the basement in the northeast room of the building; that there were two windows in the machine shop; that they did their welding and smithwork at the forge in the machine shop; that Scheer was the saw filer and had worked there between nine and ten years; that Joe Rempesz (called "Little Joe") worked there, too, whenever the foreman told him to; that Little Joe was general utility man; that he (witness) was working there on November 11th, 1930, when the accident occurred; that it was something like five o'clock, close to quitting time; that that afternoon he had been doing everything in the way of belt making and repairing belts and putting them on and taking them off; that they had to hang a motor the next day and they told him to get everything ready and that they had it all ready except an eye bolt and that he saw that Little Joe had missed that and he went into the machine shop and was standing there looking out of the window and about that minute Scheer came up and jabbed him in the rectum and that he (witness) was very goosey and when Scheer did that he threw his arm around behind and Scheer hooked his arm and said, "Damn you, I got you that time," and that he said, "Scheers, you broke my arm," and Scheer said, "No, I didn't," and that his arm fell around like that (indicating) and that he went in and told the boss that Scheer had broken his arm and the boss said, 'The God damn fool;" that at the time of this occurrence he was in the northwest part of the machine shop and that he went in there not to get the eye bolts but to tell Little Joe to get them; that Little Joe had put them away and that he (witness) did not know where they were.

We quote the following from plaintiff's direct examination:

"Q. When you got in the machine room, who started to talk first, you or Joe? A. I spoke to Joe.

"Q. What did you say to him? A. I said, 'Joe—', and about that minute he goosed me, I didn't get to tell him at all."

From plaintiff's cross-examination we quote the following:

"Q. How old are you, Mr. Blaine? A. Seventy-three.

"Q. At the time you were injured you say you had gone there to get an eye bolt? A. I went in to tell Little Joe to get the eye bolt.

"Q. So you could use the eye bolt for something you were going to do? A. Yes.

"Q. And that was sometime before quitting time? A. Yes.

"Q. And that was part of your work for the Huttig Sash and Door Company that you were doing at the time? A. Yes. . . .

"Q. And all this happened—the accident happened in the course of your employment? A. Yes.

"Q. Now, Mr. Blaine, you made a claim for compensation at one time on account of this injury, didn't you? A. Yes.

"Q. And you testified before the Workmen's Compensation Commission, or before one of the Referees of the Commission in support of your claim? A. Well, I went down there and had a talk to him and recited my complaint to them.

"Q. You were sworn down there, and testified down there, did you not, before the Referee of the Commission on the 14th day of January, 1931? A. I believe I was. . . .

"Q. Mr. Blaine, I will ask you whether you recollect this question being asked you when you appeared before the Referee of the Workmen's Compensation Commission, and you making the following answers: 'Q. Do you remember the accident of November 11, 1930, at the Huttig Sash and Door Company? A. I do. Q. Just tell this Commission how you got hurt. A. Well, how this come up we were getting our tools together—Q. Who was we? A. The machinist.' Do you recollect these questions being asked you and you making those answers? A. I believe I do.

"Q. And these other questions and answers: 'Q. What is his name? A. Joe is all I know; well, we got everything there before we put on the ring, and I said to the machinist, "Put on that big eye bolt, that one is too small," and I intended to go back and finish a little job I had, and something happened, something tickled me and I threw my arm around and I come in contact with something and broke it, and I looked around and saw Mr. Scheer behind me with something in his hand, and I said, "I got an awful lick," and he said, "You did." ' Did you make that statement before the Commission? A. I didn't make it that way. I said it to them just as I said it here.

"Q. You deny that you made that statement? A. I never give it in that way.

"Q. Do you remember being sworn to testify to tell the truth before the Commission? A. I was.

"Q. You remember that? A. Yes.

"Q. But you deny that you made the statement in this way? A. I made the statement just as I made it here. It wasn't any different.

"Q. Do you remember this: 'Q. What time in the day or night did this accident happen? A. 4:54.' Do you remember making that answer? A. That's right.

"Q. Do you recollect this question being asked you: 'Q. At the time you went into this place to talk to Joe did you see this man that tickled you? A. I never paid any attention. I was in a hurry and never noticed it.' Do you remember that question being asked you and you making that answer? A. I remember that.

"Q. Now, Mr. Blaine, did you ever indulge in this horseplay or these pranks when Mr. Gunn wasn't around? A. No, I never had no time to play, or never was in a habit of doing so.

"Q. Did you ever do that? A. No.

"Q. Did you ever pile up boxes on the benches of other fellows when they were away from the bench? A. No.

"Q. You never did that? A. No.

"Q. You didn't throw any boxes at the other men? A. No.

"Q. How is that? A. No.

"Q. Now what is it, Mr. Blaine, that you claim now was done to you at that particular time, just tell us again what happened at this particular moment that you threw your arm around and got it broke? A. I stepped up to Joe, and I was goosed.

"Q. What do you mean by being goosed? A. He run his thumb up my rectum.

"Q. That is what happened at that time? A. That is what happened, and I threw my hand around behind me and naturally jumped and throwed my arm and he hooked it with his—

"Q. Who? A. Mr. Scheers, he says, 'Damn you, I got you that time,' and I says, 'You broke my arm, Scheers.'

"Q. You testified to that before the Workmen's Compensation Commission, did you? A. Yes.

"Q. And this testimony, or this statement here you say is all wrong that I read to you as being your testimony? A. I don't claim it is all wrong, but there's a couple of questions here that wasn't right.

"Q. Tell me what part of this is wrong: 'Q. What is his name? A. Joe, is all I know; well, we got everything on there before we put on the ring and I said to the machinist, "Put on the big eye

bolt, that one is too small" '; is that right? A. No, because I went in there to tell him to get the eye bolt and put it on there and that is when I got goosed.

"Q. So you didn't say, 'Put on the big eye bolt, this one is too small'? A. I didn't get to tell him.

"Q. 'I intended to go on back and finish a little job on the belt and something happened?' A. No, I got—

"Q. Did you say that part of it; answer yes or no? A. I went back, yes.

"Q. Did you say this part before the Commission, 'I intended to go back and finish a little job that I had and something happened'? A. Yes.

"Q. 'And something tickled me and I threw my arm around and I come in contact with something and broke it.' Did you make that statement? No, I knew what I come in contact with.

"Q. Do you remember making this statement: 'Something tickled me and I threw my arm around and come in contact with something and broke it'? A. No, I never made it that way.

"Q. 'And I looked around and saw Mr. Scheer behind me with something in his hand, and I says, "I got an awful lick", and he says, "You did?" ' Do you remember making that statement? A. No.

"Q. Do you say that you didn't make it. A. No, I'll say I don't remember making it that way if I have.

"Q. You won't say that you didn't make it? A. No, but I didn't make it in that way.

"Q. Now, as to this question: 'Q. At the time you went in this place to talk to Joe, did you see this man that tickled you? A. I never paid any attention, I was in a hurry and I never noticed it.' Do you remember making that answer? A. Yes, I remember making it.

"Q. You made that answer? A. Yes, I remember it. . . .

"Q. The company sent you to Dr. Hennerich? A. Yes. At first I went twice a week, well, probably, three months, and then I went once a week for five months. No, I did not pay Dr. Hennerich for that, and he never sent me any bill."

Joe Gunn, witness on behalf of plaintiff, testified that he was master mechanic for defendant and had worked there for over twenty years and that plaintiff, Blaine, was hired for belt work and that Joe Rempesz was a lathe hand and Scheer was a saw filer; that they worked underneath the employment office, a place about 60x60 in the basement; that he had authority to discharge these men; that he did not see the accident to plaintiff on November 11th, 1930, but came in right afterwards and wrapped up plaintiff's arm; that it was just ten minutes before quitting time and that plaintiff told

him that Scheer goosed him and he slammed back and he hit arm, or broke, or something; that he (witness) didn't know at that time what had happened to plaintiff; that he had seen Scheer tickle or goose plaintiff, hundreds of times; that Scheer would throw down saws and scare plaintiff.

There was other testimony in the instant case to the effect that plaintiff also engaged in this horseplay during working hours and that his proclivities in that respect were about 50-50 with those manifested by Scheer; that plaintiff played pranks on Scheer and other employees when their work threw them together.

There was also testimony that the foreman over plaintiff and Scheer and other employees "frowned" on the horseplay and pranks and warned against such jocular antics during working hours.

Defendant's first assignment of error is that the trial court at the close of the case should have given, instead of refusing, its proffered instruction in the nature of a demurrer to the evidence.

Plaintiff's counsel urge, in substance, that defendant is estopped from now urging that the case is one cognizable only before the Workmen's Compensation Commission because, having been a party defendant to the claim originally filed by plaintiff before that tribunal to recover compensation, and that body having found, from the evidence adduced at the hearing, that while the accident arose in the course of the employment it did not arise *out of the employment,* and that, as such holding was tantamount to a ruling that the accident was not covered by the Workmen's Compensation Law and there being no appeal therefrom, defendant is irrevocably bound in this common-law action, based on its alleged negligence, from now asserting to the contrary.

We do not agree to this contention of plaintiff's counsel. There is a radical difference between the *status* of a plaintiff and a defendant. This is pointed out in Kennefick-Hammond Co. v. Fire Ins. Society, 205 Mo. 294, 103 S. W. 957, as follows:

"The plaintiff goes into court voluntarily, the defendant is 'lugged' in, that is, pulled in by the lugs, *will ye, nill ye.* The plaintiff goes up to battle on his own ground—he pitches the field. The trial court may parry the flanking operation and force defendant to join battle on the position taken by plaintiff. Having been thus coerced and having yielded, as he was in duty bound to yield (and because he could not help himself) how can it be said that, because he made the very best of a bad bargain and tried 'to pluck the flower, safety, from the nettle, danger,' he lost his right to complain of the court's ruling in coercing him?"

In John Deere Plow Co. v. Cooper, (Mo. App.), 91 S. W. (2d) 145, this court, in consonance with the same idea, used this language:

"It follows, therefore, that a defendant may, if he chooses, urge as many defenses as he thinks he has. He may, if he pleases, figur-

atively, unfurl and fight under the black flag. He cannot be estopped from complaining of the action of the trial court and his adversaries in forcing him to fight the battle upon grounds selected by them and at a great disadvantage to him.'' See also Cochran v. People's R. Co., 113 Mo. 359, loc. cit. 366, 21 S. W. 6; Barker v. St. L. I. M. & S. Ry. Co., 126 Mo. 143, loc. cit. 151.]

The ruling of the Workmen's Compensation Commission to the effect that the injury to plaintiff did not arise out of the employment, was a ruling from which the plaintiff in this suit, being the claimant when the same injury was being investigated before that Commission, had the right to appeal and he neglected to do so, hence, that ruling of the Compensation Commission, not appealed from by the claimant, necessarily became binding upon him, growing out of his own laches in failing to exhaust his remedy. He voluntarily brought his claim before the Workmen's Compensation Commission, thereby conceding that his injury was cognizable before that body. The defendant, by appearing and disputing his right to compensation in the proceeding, in our opinion, was not thereby deprived of making any legitimate defense in the present suit, which was brought after the claimant failed to appeal from the adverse ruling of the Workmen's Compensation Commission. The Commission made its decision based on the testimony offered before it. Plaintiff then brought his suit against the defendant on the common-law charge of negligence, in which suit another record was made of facts relating to the accident, so that, we derive our jurisdiction to pass on the instant case, and the record made in the instant case in the circuit court, by the ordinary procedure of appeal, and we are, necessarily, required to determine the facts as to whether or not the record in the instant case discloses a case which is cognizable only under the Workmen's Compensation Law. We could only be bound by the record which was made before the Workmen's Compensation Commission by ordinary process of appeal from the ruling of that Commission through the circuit court to this court. The statute, Section 3342, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 3342, p. 8275), requires no testimony to be taken, in considering appeals from the Workmen's Compensation Commission, other than that offered before the Commission. So that, when an appeal is taken to a circuit court from the Workmen's Compensation Commission, the record made before the Commission is all that court has to consider. Consequently, our examination of the instant case, not having come to us through an appeal from the Workmen's Compensation Commission, necessarily requires us to confine our attention to the record made in the instant case in the circuit court. That record may be dissimilar in many respects from the record made before the Workmen's Compensation Commission. So that, if, from

the record before us we conclude that it shows a case clearly cognizable before the Workmen's Compensation Commission it would follow that plaintiff could not recover in this action. In other words, if we find, under the record before us, that the plaintiff's case is one cognizable before the Workmen's Compensation Commission, then that tribunal has sole jurisdiction over the matter in controversy.

Under the provisions of Section 3301, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 3301, p. 8232) where, as in the instant case, both employer and employee are subject to the provisions of the Workmen's Compensation Law, the employer is liable, irrespective of negligence, to furnish compensation to the injured employee on account of an "accident arising out of and in the course of his employment," and is released from all other liability.

It has been held that insofar as a given case may be affected by the Workmen's Compensation Act, that act is not cumulative to, or supplemental of, the common law, but, instead, is wholly substitutional in character. [Cummins v. Union Quarry Construction Co. (Mo. App.), 87 S. W. (2d) 1039; Gayhart v. Monarch Wrecking Co., 226 Mo. App. 1118, 49 S. W. (2d) 265; Oren v. Swift & Co., 330 Mo. 869, 51 S. W. (2d) 59; De May v. Liberty Foundry Co., 327 Mo. 495, 37 S. W. (2d) 640; Pfitzinger v. Shell Pipe Line Corporation, 226 Mo. App. 861, 46 S. W. (2d) 955.]

Section 3301, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 3301, p. 8232) provides that rights and remedies granted to an employee under the Workmen's Compensation Law exclude all other rights and remedies.

It is well settled law that injuries sustained by an employee at the hands of a fellow employee through jocular sportive acts, commonly designated horseplay, constitute "accidents arising out of and in the course of the employment" and are, therefore, compensable. [Gillmore v. Ring Const. Co., 227 Mo. App. 1217, 61 S. W. (2d) 764; Keithly v. Stone & Webster Engineering Corp., 226 Mo. App. 1122, 49 S. W. (2d) 296; White v. Kansas City Stock Yards, 104 Kan. 90, 117 P. 522; Leonbruno v. Champlain Silk Mills, 229 N. Y. 470, 128 N. E. 711; J. C. Hamilton Co. v. Bickel (Okla.), 49 Pac. (2d) 1065; General Accident Corp. v. Crowell, 76 Fed. (2d) 341; Stuart v. Kansas City, 102 Kan. 307, 171 Pac. 913; In Re Loper, 64 (Ind. App.) 571, 116 N. E. 324; State ex rel. Johnson Sash & Door Co. v. Dist. Court of Hennepin County, 140 Minn. 73, 167 N. W. 283; Twin Peaks Canning Co. v. Industrial Comm. (Utah), 196 Pac. 853.]

If an employee whose predilection for playing pranks, which are likely to result in injury to his fellow employees, is knowingly kept in the employ of the master the danger of injury becomes an incident of the employment.

In the April, 1933, No. of the Wisconsin Law Review appears the following: .

"In White v. Kansas City Stock Yards, 104 Kans. 90, 177 Pac. 522 (1919), an employee had been injured by an electrically charged wire fastened by fellow employees to an iron door through which the plaintiff had to pass. The Court said: 'It has also held that, while ordinarily a master is not liable under the compensation act for injuries to a workman which have been caused through the mischievous pranks and sportive jokes of his co-employees yet the rule is otherwise where the master has knowingly permitted such mischievous pranks to continue. In such cases the danger of injury becomes an incident of the employment. . . .

"The cases permitting recovery for horseplay injuries do so on the principle that the 'well-nigh universal human craving for fun,' which leads to practical joking and rough play, finds special opportunity for expression in the gathering of men in common employment in factory, store or office. The danger of injury from such not unexpected pastimes is therefore a special risk of the employment. 'Whatever men and boys will do when gathered together in such surroundings, at all events if it is something reasonably to be expected' is therefore a hazard of the industry for which compensation should be given. [Leonbruno v. Champlain Silk Mills (1920), 229 N. Y. 470, 128 N. E. 711.]"

Recent cases evidence a broad and liberal construction of the compensation law and injuries will be regarded as within the scope of its intendment unless expressly excluded. [Pearce v. Modern Sand & Gravel Co. (Mo. App.), 99 S. W. (2d) 850; O'Dell v. Lost Trail, Inc. (Mo.), Advance Sheets, 100 S. W. (2d) 289.]

In Conlin v. Kansas City Public Service Co. (Mo. App.), 41 S. W. (2d) 608, it was held that a machinist, employed by defendant, who was struck in the eye by a baseball bat thrown by a fellow employee, while playing in an indoor baseball game in one of defendant's buildings, during the lunch hour, was injured by an accident arising out of and in the course of the empoyment, and was, therefore, entitled to compensation.

We have reached the conclusion that the petition in the instant case, coupled with the admissions contained in the record before us, and the testimony also contained therein, clearly show a case under the Workmen's Compensation Law and we are convinced, in the light of the record before us, that the plaintiff was injured as a result of an accident arising out of and in the course of the employment.

It follows therefore, that the trial court had no jurisdiction to hear and determine the cause and that the instruction in the nature of a demurrer to the evidence tendered by defendant at the close of the case should have been given.

It follows that the judgment of the trial court should be reversed and, it is so ordered. *Becker* and *McCullen, JJ.*, concur.

## ON MOTION FOR REHEARING.

HOSTETTER, P. J.—Plaintiff's counsel have filed a lengthy motion for rehearing in his behalf. As, in their original briefs, they strongly stress the failure of defendant employer to appeal from the award made by the Referee (the Commission never having made an award on review), and now urge that by reason of the failure of defendant employer to appeal from the award and of the 'failure of the claimant (plaintiff in the instant case) to appeal, the defendant in the instant suit is firmly and conclusively bound under the doctrine of *res adjudicata* by the alleged ruling of the Referee that the Workmen's Compensation Commission had no jurisdiction to hear and determine the issues. They also strongly condemn the defendant employer for its alleged offense in persuading the Referee to hold as he did, and for its failure to admit on the hearing before the Referee the existence of the relationship of master and servant, and that the accident arose out of the employment and to have had the matter there disposed of on its merits.

Plaintiff's counsel quote what they *claim* to have been extracts from the employer's answer in the case before the Referee. They blandly reach the conclusion that defendant is estopped in the instant case from asserting that the accident, complained of, brought it into that class of cases cognizable only before the Workmen's Compensation Commission and that, therefore, the circuit court was without jurisdiction to hear and determine the instant case because of the language of Section 3301, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 3301, p. 8232) which excludes from the employee all other rights and remedies and provides for the release of the employer from all liability other than that imposed by the Workman's Compensation Law.

In respect to the alleged injurious consequences to defendant employer, growing out of its failure to appeal from the ruling made by the Referee of the Workmen's Compensation Commission, plaintiff's counsel are in egregious error because it had no right to appeal. The award was that claimant was not entitled to compensation. Therefore, the award was *in favor* of the defendant employer and *against* the claimant. The right of appeal is conferred only by statute. How could the defendant employer be aggrieved by a decision in its favor? The law is well settled, that a party, who necessarily could not be aggrieved by a verdict in his own favor, has no right of appeal, and we are surprised at the attitude of plaintiff's counsel in their tenacious insistence that the employer's failure

to appeal when the award thus made by the Referee, after hearing the claim, has resulted in such a tying up by the ropes of *res adjudicata* and estoppel as to prevent defendant in the instant case from asserting its legitimate defenses. [McClain v. Kansas City Bridge Co. (Mo. Sup.), 88 S. W. (2d) 1019; Long Mercantile Co. v. Saffron (Mo. App.) an opinion of this Court handed down May 4th, 1937, and not yet reported.

The claimant was the only one of the litigants who had the right to appeal and he failed to do so, but instead, on January 17, 1931, the day following the promulgation of the award, began the instant suit based on the charge of negligence against the defendant in the circuit court.

The dates of the occurrences are somewhat significant and are as follows:

Date of accident, November 11, 1930.

Date of hearing by Honorable Edward C. Friedwald, Referee of the Missouri Workmen's Compensation Commission, January 14, 1931.

Date of the award of no compensation, January 16, 1931.

Date of the institution of this suit in the circuit court, January 17, 1931.

It does not appear that claimant made any effort to have his claim heard in review by the Commission as he might have done under the provisions of Sections 3340, 3341, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., secs. 3340, 3341, pp. 8273, 8274) and seemingly contented himself with the ruling of the Referee and also, disdaining to appeal, immediately on the next day, began his present suit in the circuit court.

The record in the instant case discloses that the defendant employer, in recognition of the duty imposed on it by the provisions of Sections 3311, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 3311, p. 8246) furnished its own regularly employed physician, Dr. Hennerich, to treat plaintiff and that the latter received and accepted such medical treatment regularly from the 12th day of November, 1930 (the day following the "accident") for several weeks thereafter.

There is nothing in the record in the instant case showing what answer, if any, the defendant filed while the plaintiff's claim was pending before the Workmen's Compensation Commission, and the alleged excerpt therefrom set out by plaintiff's counsel as indicating a denial of the fact that the claim of plaintiff was one falling under the jurisdiction of the Workmen's Compensation Law, counts for nothing. It will not be seriously contended by any one, we trust, but that on appeal of any case, the reviewing court must confine its attention to the record brought up in that particular case. The only part of the record made in the case heard by the Referee, which became a

part of the record in the instant case, was the "Award on hearing" by the Referee set out in our original opinion, which was signed by the Referee and the Assistant Secretary of the Commission, and this was offered and put in evidence by the plaintiff in the instant case.

The curtain is partially lifted in respect to the testimony given by the plaintiff, who was interrogated at length, particularly on cross-examination, as to the testimony he gave at the hearing before the Referee of the Commission, which is also set out in our original opinion, and it is apparent that there is a radical dissimilarity between the testimony which was given before the Referee and that given in the trial of the instant case in the circuit court.

We have no hesitation in saying that if the testimony adduced in the instant case in the trial court had been the same as that adduced at the hearing before the Referee, then the ruling of the Referee to the effect that the accident resulting in the employee's injuries, did not arise *out of* as well as in the course of his employment, was clearly wrong. But, of course, we have no knowledge as to the character and extent of the testimony adduced before the Referee, except as set out hereinbefore.

The record in the instant case shows clearly a case falling under the Workmen's Compensation law, and also that the plaintiff was entitled to compensation, and that the Workmen's Compensation Commission was the only tribunal which had jurisdiction to hear and determine the issues.

A gloomy and lugubrious prophet of the Old Testament somewhat impatiently, and, as if urged by deep vexation of soul, propounded a query which he proceeded to answer in the negative in very cryptical, disquieting and discomforting language. His query was this:

"Can the Ethiopian change his skin, or the leopard his spots?"

Jeremiah 13:23.

So may we inquire: Can a case clearly falling into that class of cases which are compensable and cognizable only by the Workmen's Compensation Commission be changed *ad libitum* to one cognizable by the courts of the common law by utilizing the charge of negligence? If so, the following untoward results would inevitably follow: Suppose the claimant for compensation should feel, as apparently the plaintiff in the instant case did, when he filed his claim, that he could recover more by a suit in the circuit court based on a charge of negligence against his employer, than would be awarded him as compensation by the Commission. Then he might file his claim with that tribunal and so manipulate the testimony by deleting proof of certain pivotal facts and thereby induce the Commission or the Referee to deny compensation because of a shortage of technical proof; then he immediately jumps into the circuit court with a charge of negligence

and recovers from the jury $8000, as in the instant case, an amount largely in excess of the amount of compensation which could be awarded him. This would be, indeed, a very dangerous precedent to establish. It would tend to break down the statutes covering the Workmen's Compensation Act.

If the contention of plaintiff's counsel be upheld, it would result in a board of three members, only one of whom is required to be "learned in the law," or the Referee, as in this instance, to fix and determine in advance the jurisdiction of the circuit courts, the Courts of Appeals and the Supreme Court, leaving them no option to determine their own jurisdiction, a most humiliating position for the courts.

Plaintiff's motion for a rehearing should be, and is, overruled. *Becker* and *McCullen, JJ.,* concur.