John Mangiaracino v. Laclede Steel Company, a Corporation, Appellant.—145 S. W. (2d) 388.

Division One, December 11, 1940.

*Joseph N. Hassett, Lewis, Rice, Tucker, Allen & Chubb, Milton H. Tucker* and *Robert T. Burch* for appellant.

38

*Reardon & Lyng* and *John H. Martin* for respondent.

HYDE, C.—This is an action by an employee against his employer for damages for personal injuries. Plaintiff had verdict and judgment for $4500. Defendant appealed to the St. Louis Court of Appeals which transferred the case here on the ground that a constitutional question was involved.

Plaintiff lived in Madison County, Illinois. He worked in defendant's plant there and it was there he entered the employ of defendant. Plaintiff's petition alleged that on the date of his injury he was employed in defendant's plant; that while he was at hotbed No. 2 therein the "machinery, motor and rollers did suddenly, unexpectedly and without warning start in motion and move and plaintiff's left foot was caught therein;" that this was due to negligence of defendant, in that "defendant negligently and carelessly caused, suffered and permitted the electric current of said machinery in said hotbed No. 2 to be and remain on and negligently caused, suffered and per-

mitted the main switch to said machinery to be connected or engaged, all in violation of the duly promulgated rule and custom of the defendant's said mill.'' This was the only charge of negligence submitted, but the petition contained other charges, such as failure to warn, failure to inspect, etc. Defendant's answer contained a general denial, alleged contributory negligence, set up also provisions of the Illinois Workmen's Compensation Act and certain decisions of the Supreme Court of Illinois, and stated that the only rights plaintiff had were under that Act.

Plaintiff filed a reply, which (as summarized in plaintiff's brief) pleaded that he had filed a claim with the Industrial Commission of Illinois; that the matter was heard by an arbitrator appointed by that Commission, who found in favor of the employee and against the employer; that then the employer appealed to the full Commission, which, after reviewing the record, affirmed the award in favor of the employee; that the employer then caused a writ of certiorari to be issued out of the Circuit Court of Madison County, Illinois, to the Industrial Commission and John Mangiaracino to review the proceedings held before the Industrial Commission; that this matter was then submitted to the Circuit Court of Madison County; that the judgment of that Court was: ''It is ordered by the Court that the decision of the Industrial Commission be and the same is set aside, and the Court finds that said injuries did not arise out of and in the course of the employment, and that petitioner is not entitled to receive from respondent compensation on account of said injuries.'' Plaintiff's reply also pleaded the statutory and case law of Illinois with respect to the jurisdiction and power of the Circuit Court of Madison County in this proceeding, and also set forth the decisions of the Supreme Court of Illinois to show that this accident did not arise out of and in the course of the employment within the meaning of those terms as used in the Illinois Compensation Act; and that the decision of the Circuit Court of Madison County, Illinois, was a final adjudication on the merits by a court of record having jurisdiction over both the subject matter and the parties to the accident, and that such ruling must therefore be given full faith and credit by the courts of Missouri under Section 1, Article IV, of the Constitution of the United States.

Plaintiff's evidence (again substantially taking plaintiff's statement without quotation marks) tended to show that plaintiff had been working for the defendant in several capacities for about fourteen months (including work on hotbeds) prior to the date of the accident; that for about three or four months immediately preceding May 1, 1936, he had been working as a billet boy, in the mill, and was so employed on the date of his injury; that defendant remelted large steel rails, and cast out of them billets which were described as round bars of varying diameters and about seventy to eighty feet in

length; that billet boys receive this billet in the mill, bend it, and then feed it into the rollers which take the steel billet to the finishers, whence it is passed down another series of rollers to the hotbed, and from these it then goes to the shearers who cut it to fit the length required in the orders on hand; that there are three hotbeds, each running parallel to the other, and each about five or six feet wide; that the steel is ejected from the hotbed by the use of flappers or paddles onto grates; that these flappers are controlled by large electrically operated motors immediately adjacent to the bed; and that plaintiff was injured on the middle or No. 2 hotbed. Plaintiff's testimony also was that the accident occurred between 9 and 9:30 P. M., during his rest period; that on his job they worked a half an hour on, and then had a half an hour off; that they could go anywhere in the plant during that half an hour off; that he went down to hotbed No. 1 on which a friend of his, Pete Ferro, had just started working that day; that he showed Pete how to pull the bed, and do the work better with less strain on himself; that he remained there about five minutes and then went over to hotbed No. 2, where he met Cliff Shambro, also a friend of his; that Ferro was with him at the time, and there were several other employees there; that Shambro was sitting on the seat, and the plaintiff sat on the turtle (part of the machine containing the motors); that he was there about five minutes and had his foot on the bar; that as he started to get up when the machinery started in motion, his left foot went into the bar, injuring him.

Plaintiff had evidence tending to show that there was a rule of the company that when the hotbed was not being operated the current should be turned off; that they had direct orders to turn off this power when the hotbed was not in operation; that prior to the date of the accident, there was also a custom that both billet boys and men, who worked on the hotbed, would sit around on the hotbeds that were not in operation during their rest period; that there were no rules requiring the men to be in any particular part of the plant during their time off; that employees never were forbidden to sit on a hotbed that was not in operation; that plaintiff was familiar with the rule that the last man on the shift was to disconnect the current from the hotbed at the main switch; and that he knew the hotbed machinery could not operate if this main switch were disconnected. Defendant's foreman (called by plaintiff) testified that when he saw anybody from the mill (where plaintiff was employed) in the hotbed (which was a different department of the plant) that he would tell them to go back to their department; but that he did not remember seeing plaintiff in his department when he was a billet boy or recall ordering him away from the hotbed. It was admitted that both plaintiff and defendant were under the Illinois Workmen's Compensation Act.

It is argued that this made a case for the jury because "plaintiff was an invitee of the defendant, and, as such, defendant owed him

the duty of exercising ordinary care for his safety while he was within the limits of the invitation.'' Plaintiff cites no cases under this point, but it is clear from his argument that the only basis for plaintiff's invitation was his employment. (Plaintiff's argument says: ''Here we have a man, who, during his working hours, was at a place he had every right to be.'') Certainly he was not invited upon the premises, or any part thereof, for any other reason than to work there for defendant, or, between tasks, to await his next task there. Obviously, that is the only basis of invitation the evidence warrants. Likewise, the only duty of defendant on such occasion, which could be the basis of a negligence case, is the duty an employer owes to his employee. As to the status of employees, while resting, eating or waiting between tasks, and the rights and duties between employers and employees during such occasions, see 18 R. C. L. 582-583, secs. 87-88; 39 C. J. 272-274, secs. 397-398; 36 A. L. R. 906 (note); 4 Labatt's Master and Servant, 4690-96, sec. 1558. [See, also, Wirta v. North Butte Mining Co. (Mont.), 210 Pac. 332, 30 A. L. R. 964 and note l. c. 972.] Certainly plaintiff did not cease to be an employee by merely stopping actual work temporarily while still on the premises, if he was at a place where, as an employee, he had a right to be. [See Gardner v. Stout, 342 Mo. 1206, 119 S. W. (2d) 790.] The decisive question is: What rights did plaintiff have in Illinois in this kind of a case?

Secs. 6 and 11 of the Illinois Workmen's Compensation Act (Secs. 143 and 148, Chap. 48, Smith-Hurd, Ill. Ann. Stat.), are as follows:

''Sec. 6. No common law or statutory right to recover damages for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, shall be available to any employee who is covered by the provisions of this act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury. . . .

''Sec. 11. The compensation herein provided, together with the provisions of this act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this act, or of any employer who is not engaged in any such enterprises or businesses, but who has elected to provide and pay compensation for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this act, and whose election to continue under this act, has not been nullified by any action of his employees as provided for in this act.''

The Supreme Court of Illinois (construing these provisions in a case by an employee against a third party in which the effect of Sec. 29 (Sec. 166, Chap. 48) for the employer's subrogation was also decided), after reviewing cases, held ''that the common-law right

of action of an employee against his employer, for negligently injuring him in the course of his employment, is abolished." [O'Brien v. Chicago City Ry. Co., 305 Ill. 244, 137 N. E. 214; see, also, Bishop v. Chicago Rys. Co., 290 Ill. 194, 124 N. E. 837; Stevens v. Illinois Central Railroad, 306 Ill. 370, 137 N. E. 859; Faber v. Industrial Commission, 352 Ill. 115, 185 N. E. 255; Mt. Olive & Staunton Coal Co. v. Industrial Commission, 355 Ill. 222, 189 N. E. 296; Wright v. Peabody Coal Co., 290 Ill. App. 110, 8 N. E. (2d) 68.] In the Mt. Olive Company case, supra (where employee was injured during lunchtime) the court said that "if an employee is injured at a place where he reasonably may be and while he is engaged in doing something incidental to his employment, the injury arises in the course of his employment," so that he is entitled to compensation under the Illinois Act. That is exactly what is held in Great Atlantic & Pacific Tea Co. v. Industrial Commission, 347 Ill. 596, 180 N. E. 460, cited by plaintiff, where compensation was denied an' employee who was injured at a place where he had no right to be and while doing something the Company's rules prohibited employees to do. That also is exactly what defendant claims to be the true facts of this case (defendant's foreman said he had never even seen an employee sitting on the machine where plaintiff was injured); but plaintiff claims (and at this trial made a prima facie case in support thereof) that the situation here was just the opposite of that ruled in the Tea Company case.

In Gieseking v. Litchfield & Madison Ry. Co., 339 Mo. 1, 94 S. W. (2d) 375, we held that an Illinois railroad employee could not recover on a common law action (for injuries sustained in intrastate transportation from failure to comply with the Safety Appliance Act, 45 U. S. C. A., sec. 11), "because such a common-law action has been superseded by the Workmen's Compensation Law of his State;" and that he "must prove himself to have been injured . . . in interstate work, in order to be within the scope of the Federal Employers' Liability Act (45 U. S. C. A., secs. 51-55), or he has no right, other than the right his state compensation act gives him." We think plaintiff is in a similar situation here. Plaintiff cites no Illinois case which holds that, on a state of facts similar to this, he would have any right other than compensation under the Workmen's Compensation Act. All of the above cited Illinois cases indicate that he would have no other right. Plaintiff says that it would violate the Fourteenth Amendment to the United States Constitution to so hold because that would be taking from him a vested common law substantive right without substituting therefor some other adequate substantive right. However, it is clear that plaintiff was given rights under the Illinois Compensation Act which extended his employer's liability beyond what it was at the common law. [See Arquin v.

Industrial Commission, 349 Ill. 220, 181 N. E. 613.] Moreover, the Illinois Act was in effect many years before plaintiff's employment began.

Plaintiff's principal claim seems to be that because an Illinois court has found that plaintiff did not have a compensation claim, such judgment is conclusive that he had a common law action. We think this is *non sequitur*. Of course, we must give full faith and credit to the Illinois judgment. But when we do, what does that judgment decide for us? In the final analysis, that judgment merely shows that the Illinois court decided that plaintiff (who there had the burden of proof) failed to prove that his injuries arose out of and in the course of his employment. Certainly the ruling of that court (which had no common law case before it) that plaintiff did not then prove a compensation case determines nothing as to whether or not he could later prove a common law case. We do not know what the Illinois court had before it, or why it decided that plaintiff failed to prove a compensable case under the Illinois Act. Perhaps plaintiff's proof therein failed to make a case under the rule of the Great Atlantic & Pacific Company case (180 N. E. 460) as his prima facie case herein no doubt now does. But why he failed there makes no difference in this case. What we are called upon to decide is: What do plaintiff's pleading and evidence show now, in this case? [Blaine v. Huttig Sash & Door Co., 232 Mo. App. 870, 105 S. W. (2d) 946; Culhane v. Economical Garage, 195 App. Div. 108, 186 N. Y. Supp. 454.] We hold that there is only one kind of a case that either his pleadings or evidence herein could show, and that is a case based upon the duty of due care which an employer owes to his employee while he is at a place where he has a right to be during the hours of his employment. In other words, plaintiff's prima facie case shows a common law master and servant case which must necessarily arise out of and in the course of the employment. The Illinois Workmen's Compensation Act, and all of the cases construing it, clearly show that such a common law action on such a case was abolished, when that act was adopted. Plaintiff's trouble is that he cannot prove an Illinois common law case by evidence that shows only an Illinois Workmen's Compensation case. Since plaintiff's proof shows no common law cause of action in Illinois, we must hold that he had none here.

The judgment is reversed. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.