(No. 14718.—Reversed and remanded.)

ROSCOE STEVENS, Defendant in Error, *vs.* THE ILLINOIS CENTRAL RAILROAD COMPANY, Plaintiff in Error.

*Opinion filed December 19, 1922—Rehearing denied Feb. 9, 1923.*

1. STATUTES—*statement of doctrine of "last antecedent clause," as used in statutory construction.* Relative or qualifying words or phrases are to be applied to the words or phrases immediately preceding and not as extending to or including other words, phrases or clauses more remote, unless such extension or inclusion is clearly required by the intent and meaning of the context or disclosed by an examination of the entire act.

2. WORKMEN'S COMPENSATION—*amendment of 1919 to section 3 of Compensation act construed.* The amendment of 1919 to section 3 of the Compensation act, declaring that the business of distributing commodities by horse or motor vehicles shall be deemed extra-hazardous if more than three employees are engaged therein, applies where the hauling is an incident to the principal business of the employer, which may or may not be hazardous, and does not mean that an employer whose principal business is hauling or carriage by land, and who for that reason is automatically under the act by section 3, must have more than three employees.

3. NEGLIGENCE—*when plaintiff must show that defendant was not bound by Compensation act.* An employee who is under the Compensation act cannot maintain an action against a defendant, not his employer, for damages for personal injuries arising out of his employment if such defendant is likewise under the act, and where it appears that the defendant is engaged in a business which *prima facie* brings it within the provisions of the act, the plaintiff, under the provisions of section 29, must show by pleading and evidence that the defendant was not bound by the act.

4. SAME—*when a copy of speed ordinance is not sufficiently proved a true copy.* In an action for damages for personal injuries caused by the collision of a train with an automobile truck, a purported typewritten copy of an ordinance regulating the speed of trains cannot be admitted on the statement of the village clerk that to the best of his knowledge it was a correct copy.

5. SAME—*when X-ray picture is admissible in evidence.* The rule in regard to the use of ordinary photographs on the trial of a cause applies to skiagraphs of the internal condition of the human body taken by the aid of X-rays, and such a skiagraph, when verified by proof that it is a true representation, is admissible in evidence.

6. SAME—*proper method of showing accuracy of X-ray picture.* A proper method of showing the accuracy of an X-ray picture is by having the witness testify that it shows accurately what he saw when he looked into the body with the fluoroscope, or that he is skilled in the use of the X-ray machine and in taking and developing X-ray pictures, and that he took the picture offered in evidence with an accurate machine, and that from his experience he is able to say that it is an accurate picture of the internal condition it represents.

7. SAME—*expert witnesses cannot testify to what possible diseases the injury may result in the future.* Expert witnesses should not be permitted to testify as to what possible diseases may result from the injury, but can only give their opinions as to future consequences that are shown to be reasonably certain to follow, as mere surmise or conjecture cannot be regarded as proof of an existing fact or of a future condition sufficient to warrant an assessment of damages.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Marion county; the Hon. WM. B. WRIGHT, Judge, presiding.

CHARLES E. FEIRICH, FRANK F. NOLEMAN, JUNE C. SMITH, and ANDREW J. DALLSTREAM, (W. S. HORTON, of counsel,) for plaintiff in error.

W. G. WILSON, and ROBERT E. WRIGHT, for defendant in error.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Roscoe Stevens, (hereinafter called plaintiff,) by Dollie Stevens, his mother and next friend, brought his action in the circuit court of Marion county against the Illinois Central Railroad Company to recover damages for personal injuries received in a collision between an automobile truck driven by him and a passenger train operated by the servants of defendant at a public crossing near the village of Odin, June 29, 1920.  Plaintiff recovered a judgment for

$1900, and this judgment was affirmed on appeal to the Appellate Court for the Fourth District. The cause is here by *certiorari.*

The trial was had upon the declaration filed by plaintiff, which set out in its four counts various grounds for recovery, and special pleas filed by defendant, averring that defendant was doing a general railroad business at the time of the collision and was therefore engaged in "carriage by land" within the meaning of the Workmen's Compensation act; that plaintiff was an employee of Robert D. Stoafer, who was doing a general truck and transfer business and was likewise engaged in "carriage by land * * * and loading or unloading in connection therewith," and that at the time of the collision plaintiff was engaged in the performance of his duties in said employment, and that the injury to him, if any, arose out of and in the course of his employment, and his right of recovery, if any, was controlled by the provisions of the Workmen's Compensation act.

Section 3 of the Workmen's Compensation act, as amended in 1919, provides: "The provisions of this act hereinafter following shall apply automatically, and without election, * * * to all employers and their employees, engaged in any of the following enterprises or businesses which are declared to be extra-hazardous, namely: * * * 3. Carriage by land or water and loading or unloading in connection therewith, including the distribution of any commodity by horse-drawn or motor-driven vehicle where the employer employs more than three employees in the enterprise or business." By the amendment of 1919, the clause, "including the distribution of any commodity by horse-drawn or motor-driven vehicle where the employer employs more than three employees in the enterprise or business," was added to paragraph 3.

Plaintiff contends that the clause, "where the employer employs more than three employees in the enterprise or busi-

ness," refers to every enterprise or business included within
paragraph 3, while defendant contends that it refers only
to a business or enterprise which distributes its own com-
modity by horse-drawn or motor-driven vehicles. It is
clear that the legislature by the amendment of 1919 in-
tended to bring within the terms of the Compensation act
additional employers and their employees, and that it did
not intend to exclude employers and employees who were
already under the act. Before the amendment all employers
and their employees engaged in the business of carriage by
land were under the act, regardless of the number of em-
ployees employed in the business. There does not occur to
us any reason why the legislature would declare to be ex-
tra-hazardous a transfer business which employs four truck
drivers without declaring to be extra-hazardous a transfer
business employing three truck drivers. The hazards would
not be increased or diminished as far as each driver is con-
cerned. It is clear that the legislature intended to add to
the businesses declared to be extra-hazardous those busi-
nesses where commodities are distributed by horse-drawn
or motor-driven vehicles as an incident to the principal busi-
ness of the employer, provided more than three employees
are employed in the business. This construction accords
with the well-recognized rule of statutory construction
known as the doctrine of the "last antecedent clause."
This canon of construction is, that relative or qualifying
words or phrases are to be applied to the words or phrases
immediately preceding, and as not extending to or includ-
ing other words, phrases or clauses more remote unless such
extension or inclusion is clearly required by the intent and
meaning of the context or disclosed by an examination of
the entire act. (*Nebraska State Railway Com.* v. *Alfalfa
Butter Co.* (Neb.) 178 N. W. 766; *Traverse City* v. *Blair
Township,* (Mich.) 157 N. W. 81; *Massachusetts General
Hospital* v. *Inhabitants of Belmont,* (Mass.) 124 N. E. 21;
*State* v. *Centennial Brewing Co.* (Mont.) 179 Pac. 296.)

It is clear to us that all businesses of carriage by land are automatically brought within the provisions of the Workmen's Compensation act without regard to the number of employees engaged in the business.

The proof showed without contradiction that plaintiff was employed as the driver of a truck and that his employer was engaged in a general transfer business, which is a business of carriage by land, and it also showed without contradiction that the injury received by plaintiff arose out of and in the course of this employment. It follows, therefore, that plaintiff is bound by the provisions of the Workmen's Compensation act, and he cannot maintain an action against defendant for damages for personal injuries arising out of his employment if defendant is likewise under the act. (*Friebel* v. *Chicago City Railway Co.* 280 Ill. 76.) The pleadings and the evidence now before us show that the defendant was engaged in a business which brought it within the provisions of the act, and in order for plaintiff to maintain his action against it, it was necessary for him to show, under the provisions of section 29 of the Workmen's Compensation act, that defendant was not bound by the provisions of that act. (*Goldsmith* v. *Payne,* 300 Ill. 119.) If the trial court had held, as it should have held, that plaintiff at the time of his injury was employed in a business covered by the act, it would have been proper for the trial court to permit plaintiff to amend his pleadings to allege, and to submit proof to show, that defendant was not bound by the act. We think, therefore, that justice requires that this cause be remanded to the circuit court, so that plaintiff may take such further steps to amend his pleadings and submit his proof as he is advised.

If this cause should be tried again, there are questions with respect to the admission of evidence which will naturally arise on the new trial, and for that reason those questions will be considered now.

The first error committed by the trial court in this re-
gard was the admission of a copy of an ordinance without
proof that the copy was a true copy.   The village hall at
Odin was destroyed by fire and with it the book contain-
ing the original ordinances of the village.   What purported
to be a typewritten copy of an ordinance of the village
regulating the speed of passenger trains was offered in evi-
dence and was admitted on the statement of the village
clerk that to the best of his knowledge it was a correct
copy.   This was not sufficient.   Before it is proper to ad-
mit the copy it must be established by competent evidence
that the copy is a true one.

The most serious error committed by the trial court in
the admission of incompetent evidence was the admission
of a so-called X-ray film which purported to show the con-
dition of plaintiff's skull.   Dr. M. L. Bradberry, a dentist,
identified a film produced in court as one prepared by him
and testified that it was an X-ray picture of plaintiff's skull.
Although a skiagraph produced by X-rays cannot be veri-
fied as a true representation of the subject in the same way
as a picture made by a camera, the rule in regard to the
use of ordinary photographs on the trial of a cause ap-
plies to skiagraphs of the internal structure and condition
of the human body taken by the aid of X-rays, and such
a skiagraph, when verified by proof that it is a true rep-
resentation, is admissible in evidence.   Like other photo-
graphs, they cannot be received as evidence until proper
proof of their correctness and accuracy is produced.   (*Chi-
cago City Railway Co.* v. *Smith,* 226 Ill. 178; *Chicago and
Joliet Electric Railway Co.* v. *Spence,* 213 id. 220.)   It
must be established by competent evidence that the picture
correctly portrays the condition it purports to represent be-
fore it has any place in the case.   Some witness must be
able to testify that the picture offered in evidence shows
accurately what the witness saw when he looked into the
body with the fluoroscope, or he must be able to say that

he is skilled in the use of the X-ray machine and in taking and developing X-ray pictures, and that he took the picture offered in evidence with the body in a certain position, (describing it,) with a machine which he knew to be in good working condition and accurate, and that from his experience he was able to say that the picture produced by the machine was an accurate picture of the internal condition of the body. These methods of establishing the accuracy of the picture are not exclusive, but whatever method is used, its accuracy must be established before it is admitted. (*Ligon* v. *Allen,* 157 Ky. 101, 162 S. W. 536, 51 L. R. A. (N. S.) 842, note p. 858.) Applying these well established rules to the facts in this case, it is apparent that plaintiff failed to establish the preliminary requirements necessary to make the X-ray film admissible. The doctor did not state that he saw the condition of plaintiff's skull nor that the film correctly represented this condition. Nor did he state how the film was taken, nor that he had ever had any previous experience whatever with an X-ray machine, nor that he had ever made an X-ray photograph, nor that he knew anything about how they ought to be made, nor that the X-ray machine used by him was accurate, nor that it was in working condition at the time the exposure was made, nor whether he had ever checked a picture made by his machine with a condition seen by his eye with the use of the fluoroscope, to determine whether the machine accurately portrayed the internal condition of the part of the body under investigation.

The error of admitting this film and the photograph printed from it was aggravated by permitting two physicians to examine the film and the photograph and then say what diseases and disabilities might possibly result to plaintiff from the injury to his skull which the X-ray film purported to show. They testified that he might possibly have an abscess of the brain, that there might be an adhesion of the brain to the dura and a consequent lessening of the

calibre of the skull, and that epilepsy might result. They were permitted to say further that these things might result in his death. It has been repeatedly held by this court that a mere possibility that future pain or suffering may be caused by an injury or that some disability may result therefrom is not sufficient to warrant an assessment of damages. Mere surmise or conjecture cannot be regarded as proof of an existing fact or of a future condition that will result. Expert witnesses can only testify or give their opinion as to future consequences that are shown to be reasonably certain to follow. *Amann* v. *Chicago Consolidated Traction Co.* 243 Ill. 263; *Lauth* v. *Chicago Union Traction Co.* 244 id. 244; *Fellows-Kimbrough* v. *Chicago City Railway Co.* 272 id. 71.

Other errors complained of are not likely to occur on a new trial and we do not consider it necessary to discuss them.

The judgments of the circuit and Appellate Courts are reversed and the cause is remanded to the circuit court of Marion county.

*Reversed and remanded.*