MARY JULE MORRISSY, Plaintiff-Appellant, *v.* ELI LILLY & COMPANY *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 78-146

Opinion filed September 18, 1979.

William J. Harte, Ltd., of Chicago (Kevin M. Forde and Timothy Michael O'Brien, of counsel), for appellant.

Burditt and Calkins and Baker & McKenzie, both of Chicago (George M. Burditt, James W. Hathaway, Donald A. O'Brien, Francis D. Morrissey, Thomas F. Tobin, Harry J. O'Kane, and Edward J. Zulkey, of counsel), for appellees E. R. Squibb & Sons, Inc., and the Upjohn Company.

Wildman, Harrold, Allen & Dixon, of Chicago, and Shook, Hardy & Bacon, of Kansas City, Missouri (Max Wildman, Richard C. Bartelt, Anne G. Kimball, and Lane D. Bauer, of counsel), for appellee Eli Lilly & Company.

Lord, Bissell & Brook, of Chicago (Hugh L. Moore, of counsel), for appellee Abbott Laboratories.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

This appeal is taken from orders of the trial court dismissing plaintiff's complaint, wherein she proposes two classes composed of the daughters of certain women who used the drug Diethylstilbestrol (hereinafter "DES") during pregnancy. These daughters are alleged by plaintiff to have been injured as a result of prenatal exposure to DES.

Her second amended complaint (hereinafter "complaint")[1] names as defendants 27 alleged manufacturers and sellers of DES, in addition to the Chicago Lying-In Hospital (hereinafter "hospital"). Count I thereof is directed against all defendants except the hospital. Among the allegations are that from 1947 through the 1960s defendants manufactured, promoted, advertised and sold to numerous pregnant women in Illinois DES that was not reasonably safe for its acknowledged and intended purposes when it left their control; that DES is contraindicated in pregnancy; that the pharmacological action of DES in pregnant females caused more abortions than it prevented; that DES is a carcinogen in females and their offspring; that certain testing available to determine carcinogenic effects of DES on humans was not done prior to its availability; that the only testing so done was inadequate and irresponsible; and that no warnings of the carcinogenic effects of DES were given.

Plaintiff further avers in count I that defendants agreed to and did jointly promote the supposed safety and efficacy of DES until, based upon their representations, the Federal Food and Drug Administration (hereinafter "FDA") allowed the commercial sale of DES generally and later for use during pregnancy. Certain of the defendants are alleged to be "* * * members of a group of drug firms which jointly agreed to [and did] cause * * * erroneous, misleading, or incomplete written submissions to be made to the FDA * * *" respecting the safety and efficacy of DES, to the injury of plaintiff

---

[1] Each count of the complaint was amended twice subsequent to the filing of the second amended version. "Complaint" as used herein refers to its final version, reflecting all amendments made.

and all members of the proposed class.[2] Nevertheless, as defendants allegedly knew, DES was neither safe nor efficient in managing problem pregnancies; shortly after the release of DES for commercial sale, physicians "throughout the country" determined that DES had no therapeutic value in pregnancy.

Plaintiff is represented as one of "a substantial number" of female children born as a result of the pregnancies referred to hereinabove and therefore exposed to DES *in utero,* suing "* * *" in her own behalf, and also as a representative of a Class of all Illinois D.E.S. daughters that is, the Class of all female children born in Illinois of mothers who purchased and ingested the D.E.S. manufactured, promoted, advertised and sold by the Defendants in Illinois, from 1947 through the 1960's." As a proximate result of the nature and conditions of DES, all members of the proposed class have developed cancerous lesions, adenocarcinoma, adenosis, or certain tumors or cytological abnormalities which in time will generate adenocarcinoma or other cancerous conditions. Since a latent period of presently indeterminable length occurs between the genesis of carcinoma and the onset of clinically observable symptoms capable of being diagnosed and treated, many members of the proposed class do not know they are DES daughters or, knowing this, that they are within a latent period. Still others exhibiting symptoms have not received "adequate medical management," without which each member of the proposed class is in jeopardy from the conditions caused by DES. There is as a consequence, plaintiff claims, an urgent need to:

"a) Identify and locate each Class member, to the extent reasonably possible.

b) Convey sufficient information concerning the effects of D.E.S. to each Class member.

c) Provide each Class member with adequate medical management of her condition for the rest of her life; or, provide each Class member with the opportunity to obtain adequate medical management of her condition for the rest of her life."

Count I concludes with a prayer for relief principally in the form of establishment of several funds totalling $41,250,000 to be administered by the court toward satisfaction of the aforesaid needs.

Count II is directed against the hospital and defendant Eli Lilly and Company (hereinafter "Lilly") and alleges that defendants conducted an experimental study concerning the possible therapeutic value of DES during pregnancy (known as the "Dieckmann study" after William J. Dieckmann, one the physicians involved); that in the course of the

---

[2] Those defendants not specifically designated as members of the alleged group were dismissed from the action on March 23, 1977, as a result of the court's prior order partially dismissing count I. Plaintiff does not here appeal from their dismissal.

study 840 pregnant women were medicated with DES without their knowledge, being told by defendants only that the medication given was safe for them and their children in order to induce participation; that defendants knew these representations of safety were untrue; and that relying upon these representations through her mother, who participated in the study, plaintiff has sustained "serious and permanent damage." Incorporated by reference are those allegations of count I relating to latent periods in the diseases alleged to be developing in class members as a consequence of DES exposure and the consequent need to identify, inform and provide medical management for each class member.

Plaintiff claims to be a member of and represent "* * * a class of all DES daughters whose mothers were medicated with DES at the HOSPITAL during the experimental 'Dieckmann study.'" Her prayer for relief is that defendants be directed " * * * to establish and maintain a fund of money reasonably calculated to compensate all class members for such medical expenses which have been and will continue to be incurred due to the physiological damage done by the DES," and to pay other damages to the class. By way of equitable relief, she seeks establishment of a fund in an unspecified amount to provide for identifying, locating and informing each class member.

On November 19, 1976, the court ordered that " * * * because common questions of law and fact do not predominate, plaintiff cannot represent a class consisting of daughters of mothers who have consumed DES as stated in Count I * * *" to seek any of the substantive remedies enumerated therein except notice to members of the class of their exposure to DES *in utero* and its possible consequences. On June 3, 1977, the court dismissed the remainder of count I, finding "* * * that other agencies are responsible for any such notice and * * * that the giving of any notice might well prove impossible * * *." On November 3, 1977, the court dismissed count II of the complaint "* * * primarily because common questions of law and fact do not predominate over the claims of the class members arising out of separate transactions." The prior orders of November 19, 1976, and June 3, 1977, were at the same time made final; all three orders are the subject of this appeal.

■■ Defendants argue that because plaintiff is informed of her exposure to DES, is receiving medical care for her alleged condition, and her mother ingested DES manufactured by only one of the several defendants, her representative cause of action should be dismissed; however, the nature of the continuing relief sought for herself and the proposed classes and the alleged concerted action by defendants are sufficient to state a cause of action for the purpose of this appeal.

The statutory requirements for maintenance of a class in Illinois under section 57.2 of the Civil Practice Act are well known, and their

applicability to this appeal is undisputed by the parties. (Ill. Rev. Stat. 1977, ch. 110, par. 57.2; *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634.) Each requirement is dealt with at some length in the briefs submitted herein. In view of our determination, however, we find it necessary to discuss only the second enumerated requirement, that "[t]here are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members."(Ill. Rev. Stat. 1977, ch. 110, par. 57.2(a)(2).) Far from being new law in its statutory form, this provision codifies prior Illinois decisional law to the effect that a proper class action must present circumstances giving rise to questions of law or fact common to all class members which predominate over any issues which may affect only individual members. Forde, *Illinois's New Class Action Statute*, 59 Chi. Bar Rec. 120, 123 (1977). [3]

This requirement has been the subject of frequent judicial comment, both prior and subsequent to its embodiment in section 57.2. (See *McCabe v. Burgess* (1978), 57 Ill. App. 3d 450, 454, 373 N.E.2d 327, *rev'd on other grounds* (1979), 75 Ill. 2d 457, 389 N.E.2d 565.) In the context of personal injury actions, however, a notable dearth of Illinois authority on point is balanced by Federal court construction of the corresponding prerequisite for maintenance of certain class actions under the Federal Rules of Civil Procedure, requiring that "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members * * *." (Fed. R. Civ. P. 23(b)(3).) The effect of this language when considered in relation to facts comparable to those of the instant case will assist our determination herein. Forde, *Illinois's New Class Action Statute*, 59 Chi. Bar Rec. 120, 123-124 (1977); Ill. Ann. Stat., ch. 110, par. 57.2, Supp. to Historical and Practice Notes, at 88 (Smith-Hurd Supp. 1979).

■■■ The comments of the Advisory Committee on the applicability of Rule 23(b)(3) generally discourage certification of a class in the context of a mass tort action (Advisory Committee's Note to Fed. R. Civ. P. 23 (1966), 39 F.R.D. 69, 103):

> "A 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of

---

[3] Inquiry into the substantive nature of proof as to facts in issue is often required to determine the propriety of class certification. (See, *e.g.*, *Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 58-59, 319 N.E.2d 5; *Goetz v. Village of Hoffman Estates* (1978), 62 Ill. App. 3d 233, 237-38, 378 N.E.2d 1276; *Haskins v. Montgomery Ward & Co.* (S.D. Tex. 1977), 73 F.R.D. 499, 502; *Developments in the Law—Class Actions*, 89 Harv. L. Rev. 1318, 1504-1516 (1976).) Nevertheless, no determination as to the merits of plaintiff's claim herein is either expressed or implied in what follows. *Haskins*, at 502; *Eisen v. Carlisle & Jacquelin* (1974), 417 U.S. 156, 178, 40 L. Ed. 2d 732, 94 S. Ct. 2140.

liability and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried."

Nevertheless, classes have been certified in cases involving injuries precipitated suddenly or instantaneously as to the issue of defendants' negligence generally. In *Bentkowski v. Marfuerza Compania Maritima, S.A.* (E.D. Penn. 1976), 70 F.R.D. 401, class certification to resolve the issue of those defendants' negligence was allowed under Rule 23(b)(3) in an action brought by passengers of a cruise ship allegedly poisoned by food or water while aboard. Likewise in *Hernandez v. Motor Vessel Skyward* (S.D. Fla. 1973), 61 F.R.D. 558, a class action was allowed on the single issue of determining whether the defendant in that case was negligent in preparing the food and water that caused the passengers of the vessel comprising the proposed class to become ill. In *Bentkowski*, however, the court characterized the facts before it as "* * * the exception which proves the rule that generally mass accidents are not the basis of a class action" (70 F.R.D. 401, 406), and in *Hernandez* it was emphasized that the issues of proximate cause and negligence must be subject to a clear cut determination before a class action might be maintained on those issues (61 F.R.D. 558, 560). Other cases have distinguished for purposes of Rule 23(b)(3) the type of mass accident situation considered in *Bentkowski* and *Hernandez*, in which a number of people in an isolated condition sustain injuries suddenly under similar circumstances, from one in which a single kind of injury is alleged to occur under different circumstances as to various class members and to continue for prolonged periods of time. (See, *e.g., Yandle v. PPG Industries, Inc.* (E.D. Tex. 1974), 65 F.R.D. 566, 571; *Rosenfeld v. A. H. Robins Co.* (1978), 63 App. Div. 2d 11, 16-17, 407 N.Y.S.2d 196, 199.) The facts before us establish that, considered as a mass tort action for damages, the present case must be regarded as belonging to the type whose proof requirements preclude class maintenance.

Plaintiff contends that individual proof requirements even as to the proximate cause of any specific ailment should not defeat the classes proposed, inasmuch as the "principle remedy" sought is equitable in nature and goes to the fact of exposure to DES rather than the present occurrence of specific injuries. By her claim thus stated, plaintiff does not appear to seek for herself or members of either proposed class personal injury damages in the traditional sense, but rather compensation for the heightened risk of contracting one or more named diseases as a consequence of DES exposure. Where ordinary personal injury damages have been sought as a consequence of DES exposure or under similar mass tort claims, class certification has been consistently denied. (See,

*e.g., McDaniel v. Johns-Manville Sales Corp.* (N.D. Ill. May 31, 1979), No. 77-3534; *Ryan v. Eli Lilly & Co.* (D. S. Car. July 10, 1979), No. 77-246; *Rosenfeld; Austin v. Johns-Manville Products Corp.* (D. N.J. 1978), No. 75-754; *Yandle.*) Denial in the foregoing cases has been grounded in the absence of common questions of law and fact that predominate over individual issues, especially with respect to the determination of the proximate cause of alleged injuries. What must be resolved in this appeal is whether the proposed classes can be maintained with increased risk of incurring specific illnesses as the common injury, and "* * * whether the ingestion of DES can cause cancer" as the common "predominant question" to be resolved as to all class members. Facilitating our analysis are two recent Federal decisions involving DES exposure in which similar actions were taken on behalf of a proposed class.

In *Ryan*, the class under consideration was composed of:

> " 'all those females who are residents of the State of South Carolina who were exposed to the risk of development of vaginal cancer and other conditions due to the use, by their mother during pregnancy of drugs manufactured by the defendants.' " (Slip op., at 2.)

Besides actual and punitive damages, the relief sought by the plaintiff in that case included creation of a trust fund:

> " '[to] provide medical examinations, and research programs to determine the cause, prevention, and cure of the cancer which is caused by the use of defendants' products and which will allow for publicizing the dangers to the public and medical profession.' " (Slip op., at 2.)

The court denied class certification for any of the relief sought based upon the plaintiffs' failure to meet the requirements of Rule 23(b)(3) as discussed hereinabove.

The plaintiff in *Rheingold v. E. R. Squibb & Sons, Inc.* (S.D. N.Y. 1975), No. 74-3420, sought to establish a class consisting of:

> " 'all those girls in the United States who were exposed to the risk of development of vaginal cancer and other conditions due to the use, by their mothers during pregnancy, of [primarily DES] drugs manufactured by the defendants.' " (mem. op., at 6.)

For her relief she sought to:

> " 'create a fund, proportionate to each defendant's volume of sales of these drugs and profits over the years, which fund will be utilized prospectively, under Court supervision or otherwise (a) to alert parents, their female offspring, and the general public to the risks of development of the cancerous condition and the necessity for periodic examinations; (b) to alert physicians to the nature of the risk and the necessity of identifying and informing former

patients of the risk; (c) to conduct intensive medical research; (d) to create and maintain a national registry of girls exposed; (e) to examine these girls periodically; and (f) to treat such girls as develop or show any propensity toward development of these conditions.' " (mem. op., at 7.)

Pointing out that " * * * plaintiff has not pleaded injury to anybody, only a *risk* of injury" (mem. op., at 8), the court held as follows:

"Plaintiff, however, has no legal remedy in the absence of injury, nor do those whom she presumes to represent. The New York courts have uniformly held that injury and damage are essential to recovery in tort. [Citations.] The fact that plaintiff's daughter may suffer injury in the future does not satisfy the present requirement of injury or damage, nor does the fact that those persons whom she seeks to represent *may* suffer injury in the future create a present cause of action in them." mem. op., at 10.

■■ Plaintiff here, as in *Ryan* and *Rheingold*, is essentially alleging the existence of latent disease as a present injury to herself and the proposed classes. The nexus thus suggested between exposure to DES *in utero* and the possibility of developing cancer or other injurious conditions in the future is an insufficient basis upon which to recognize a present injury. In Illinois, possible future damages in a personal injury action are not compensable unless reasonably certain to occur. *Stevens v. Illinois Central R.R. Co.* (1922), 306 Ill. 370, 377, 137 N.E. 859; *Lauth v. Chicago Union Traction Co.* (1910), 244 Ill. 244, 251, 91 N.E. 431; *Harp v. Illinois Central Gulf R.R. Co.* (1977), 55 Ill. App. 3d 822, 827, 370 N.E.2d 826.
■■ Notwithstanding the foregoing, the proposed class action cannot be sustained because, as defendants assert, individual determinations of proximate cause would be required which predominate over common questions of law and fact. Included among them are whether the product was properly prescribed for the mother's then existing medical condition; the dosage of DES prescribed; the amount of DES actually ingested; the point during the pregnancy at which DES was started and ended; the hereditary and genetic history and background of the patient and incidences of cancer or the other disorders suspected; the patient's exposure to known carcinogenic agents in the environment; and the personal habits of the individual subjects. Defendants argue further that the alleged cancerous lesions, or adenocarcinoma or adenosis, or certain tumors, or cytological abnormalities which can generate adenocarcinoma, or other cancerous conditions of which plaintiff complains refer to entirely different conditions, having different causes, different manifestations, different natural histories, and different prognoses.

Plaintiff contends that the foregoing are subsidiary issues as

compared to the dominant issues in the case, citing *Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 305 N.E.2d 236; *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634; *Fiorito v. Jones* (1968), 39 Ill. 2d 531, 236 N.E.2d 698; *Rosen v. Village of Downers Grove* (1960), 19 Ill. 2d 448, 167 N.E.2d 230; and *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 155 N.E.2d 595. We cannot agree. The issue characterized as subsidiary in *Perlman* was the application of relatively simple accounting procedures. In *Steinberg* to be resolved on an individual class member basis were straightforward questions of fee payment and reliance. In complex accounting evidence of tax payment, amount of payment and tax absorption by the taxpayer were the accessory individual issues in *Fiorito*. In *Rosen,* the individual issue was the question of whether prerequisite filing fees deposited in escrow with boards of education were voluntary or coerced. The questions of hypothetical, minor variations were found insufficient grounds to deny a class action in *Harrison.* In contraposition to the minimal individual issues that existed in the foregoing cases is the ampliate array of causative, contributive or influencive factors identified by defendants in the case at bar, which must be decided as to each individual member of the proposed classes in determining proximate cause, compelling us to conclude that, contrary to section 57.2(a)(2), the questions of fact or law affecting the individual members of the proposed classes would indeed predominate over questions of fact or law common to the class. A decision sustaining plaintiff's right to medical management damages by virtue of her mother's ingestion of DES would not establish the right of any other purported class member to a similar remedy. See, *e.g., Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 58-59, 319 N.E.2d 5; *Goetz v. Village of Hoffman Estates* (1978), 62 Ill. App. 3d 233, 237-38, 378 N.E.2d 1276.

The class of Dieckmann study participants was exposed to DES under more controlled conditions than those experienced by the class of all Illinois DES daughters; nevertheless, the report published subsequent to completion of the Dieckmann study and reproduced as an exhibit to plaintiff's complaint contains an account of the manner in which the study was conducted that also suggests widely varying and somewhat uncertain conditions of exposure. The strength of dosage of DES which various patients received ranged from 5 to 37.5 milligrams, "* * * depending on the period in the gestation when the patient registered in [the] clinic." Patients were given a box of tablets containing DES and instructed as to the recommended amounts to be taken; however, since patients were not directly observed as part of the study each time they took a dose, how much DES was actually ingested by each, when and under what

circumstances are not certain. Indeed, according to the authors of the report, "[w]e could not determine how many tablets [each patient] took per day or week because of the individual differences in absorption and excretion * * *" of the tracer dye used to detect ingestion of the tablets. Considered with other evidence of record indicating that the toxicity of DES is directly linked to strength of dosage, it appears that, even if the foregoing question were to be decided in plaintiff's favor, a separate inquiry would be required as to each mother to determine whether her ingestion of DES was of sufficient quantity or longevity to require any medical monitoring of the daughter at all.[4]

A different question is presented as to notice than as to other forms of relief prayed for on behalf of the classes by plaintiff. In accord with the trial court, therefore, we regard this question as worthy of separate attention.

■ Plaintiff urges the variety of possible arrangements by which notice might be provided to class members, referring to the broad discretionary powers available to the trial court under the statute. (Ill. Rev. Stat. 1977, ch. 110, par. 57.4.) Of course, due process does not in every case require notice to all class members prior to any presentation of evidence. (*Frank v. Teachers Insurance & Annuity Association of America* (1978), 71 Ill. 2d 583, 590, 376 N.E.2d 1377; *People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 311, 335 N.E.2d 448.) In order to obtain equitable relief, however, one must be able to show an actual substantial injury which is not speculative or contingent upon uncertainties. (*Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 750, 359 N.E.2d 1137; *Summit Electric Co. v. Mayrent* (1974), 17 Ill. App. 3d 545, 550, 308 N.E.2d 313.) Giving full weight to plaintiff's claim on behalf of the proposed class that lack of notice of their status as DES daughters and of the possible attendant dangers is itself an injury that calls for relief, we find that the need within both proposed classes for the relief requested is doubtful, in many individual cases perhaps nonexistent. As to the proposed class of all Illinois DES daughters, we take note of the extensive publicity of the essential facts relating to DES exposure, chiefly through the efforts of various governmental agencies, as shown by the documents attached to plaintiff's pleadings and by the documentation contained in defendant Lilly's brief on the issue of notice. Additionally, plaintiff's exhibits include several brochures, issued and apparently distributed by several among the defendants to doctors, which contain general warnings

---

[4] While we are aware of plaintiff's representation that cancer has been detected at all levels of DES exposure, the mere coincidence of the two does not obviate the need for such a case-by-case determination in the absence of an established cause and effect relationship between them at all levels of exposure.

about the potency of DES and the care with which it should be prescribed, and specific limitations as to use with certain conditions. The precise extent to which the proposed classes have been accurately "notified," directly or indirectly, as a result of these measures is uncertain; in any case, it is clear at least from the growing volume of DES litigation that they have had a widespread effect.

■■ Plaintiff argues as to the Dieckmann study class that, inasmuch as those conducting the study assert in their report that each participant was told the pills containing DES were harmless to herself and the fetus, misrepresentation and reliance were sufficiently uniform as to that group to warrant class certification. Plaintiff here is apparently referring to the following statement in the Dieckmann report: "Each patient was told that previous reports indicated that the tablets were of value in preventing some of the complications of pregnancy and that they would cause no harm to her or the fetus." The somewhat ambiguous content of this statement, especially when considered in light of the assertion further on in the report that some patients originally part of the study were dropped because their "* * * husband[s] objected to [the] medication * * *," leads us to conclude that, whatever representations were made to the participants of the Dieckmann study, they were not sufficiently uniform in substance or style to justify certification of the class for purposes of notice. See *Mink v. University of Chicago* (N.D. Ill. June 12, 1979), No. 77-1431, mem. op., at 3; *Winokur v. Bell Federal Savings & Loan Association* (N.D. Ill. 1972), 58 F.R.D. 178.

Accordingly, the orders of the trial court appealed from are affirmed.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.