Earl BOCOOK, as personal representative for and on behalf of Jessie M. Bocook, deceased; Lloyd E. Cochenour; Taylor Combs; Dora Gilkerson, as personal representative for and on behalf of Brady H. Gilkerson, Deceased; Betty Jean Stewart, as personal representative for and on behalf of Clara Legg, Deceased; James E. Leist, II; William R. Lincoln, individually; Brenda L. Lincoln, individually, and as personal representatives for their minor children; Brian Lincoln, Jeffrey Lincoln; Grayce M. Little; Yulie Lycans, as personal representative for and on behalf of Bennie V. Lycans, Deceased; Frances A. Malone; Jerry Lee Thompson; Richard V. Pennington, Sr.; Judy Salyers; Deris Scott; Carolyn Starett, as personal representative for and on behalf of Harland Starett, Deceased; Tennie Perry; James E. Curnutte; Phyllis J. Curnette; Ricky E. Endicott; Cinda L. Endicott; Adam E. Endicott; Amandia Evans; Hubert Porter, as personal representatives for their minor

---

niece, Amandia Garvin; Terry E. Harrison, individually, and as personal representative for and on behalf of her minor child, Jared Mykal Holley Harrison; Gregory A. Maynard; Karen S. Maynard, individually and as personal representatives for and on behalf of their minor children, Gregory A. Maynard, II, Steven A. Maynard; Jesse Pinson; Ola Queen, individually and as personal representative for and on behalf of her minor child, Joshua Queen; Glenna .M. Salmons, as personal representative for Josephine Layne, Deceased; Deborah Schafer, individually and as personal representative for and on behalf of her minor children; James T. Schafer; Danielle R. Schafer; Robert F. Schultz, Jr.; Mary E. Schultz, individually and as personal representatives for and on behalf of their minor child; Robert F. Schultz, Sr.; Lucy C. Schultz; Robert F. Schultz; John Viers; Lucy West; Gregory L. Wilson; Georgia Wilson, individually and as personal representative for and on behalf of their minor child; Valerie Wilson; Gregory L. Wilson, Jr.; Amandia Garvin; Hubert Porter; Plaintiffs,

v.

ASHLAND OIL, INC.; Bruce Churton; John P. Gay; Defendants.

Civ. A. No. 3:91–0839

United States District Court,
S.D. West Virginia,
at Huntington.

Jan. 11, 1993.

Monty L. Preiser, Charleston, WV, Arnold Levin, Laurence .S. Berman, Bradford J. Lam, Philadelphia, PA, Jerry S. Cohen, Anthony Z. Roisman, Richard Lewis, Washington, DC, Robert E. Reeves, Lexington, KY, James Colburn, Jane Hustead, Cabell County Pros. Atty.'s Office, Huntington, WV, for plaintiffs.

Mark Williams, Huntington, WV, Michael B. Victorson, Charleston, WV, Albert H. Parnell, Stephen M. Lore, Joseph R. Cullens, Atlanta, GA, for defendants.

## MEMORANDUM OPINION AND ORDER

STAKER, District Judge.

Plaintiffs in this action are suing the defendant (hereinafter "Ashland") for injuries allegedly caused by toxic substances contained in pollution released by Ashland into the air, water and ground in the vicinity of its Catlettsburg, Kentucky refinery. They allege that exposure to those toxic substances causes damage to the human body, both immediate and latent. Such latent effects can include cancer and other life-threatening diseases. In their complaint, the plaintiffs assert that they require, now and in the future, special medical monitoring "in order to detect the early onset" of such latent diseases which they purportedly have an increased risk of incurring because of Ashland's polluting activities. Plaintiffs seek from Ashland, among other things, a monetary award as compensation for their present personal injuries and the establishment of a fund to pay for the future medical monitoring to diagnose potential latent injuries. Plaintiffs define a claim for medical monitoring as "a claim for the costs for reasonable *diagnostic* medical examination [to provide early diagnosis of cancer and other diseases] which are a proximate result of defendant's tortious polluting activities." Plaintiffs' Surresponse, Court Document 117, at 2–3.

Ashland has moved to dismiss all claims for future medical monitoring for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). It asserts that the claim for future medical monitoring is simply a claim for damages for future medical expenses. Defendant argues that under Kentucky law, which governs this action,[1] a plaintiff must show a present, demonstrable physical injury and a reasonable likelihood of future complications of such injury in order to recover future medical expenses. Ashland contends that the plaintiffs can be divided into two groups; one group consisting of persons alleging a present physical injury and a second comprising those of persons who allege only exposure to purported toxic substances without any demonstrable physical injury. It is Ashland's position that under Kentucky law the second group of plaintiffs do not have a claim for future medical expenses, *i.e.*, future medical monitoring, until such time as a physical injury manifests itself. In other words, the second group of plaintiffs do not have a claim against Ashland to pay for medical monitoring to detect the onset of a latent disease caused by exposure to toxic substances until such time as the latent disease manifests itself or unless the exposure causes some presently discernable physical injury. Defendant insists that to allow future medical monitoring costs in any other circumstances would amount to allowing speculative damages for a possible increased risk that plaintiffs might suffer future harm.[2]

Plaintiffs have put forward alternative arguments against dismissal of their medical monitoring claims. First, they argue that Kentucky would allow such a claim upon proof of exposure to toxic substances, even without a physical injury. They contend that a claim for medical monitoring is analogous to or a corollary of a claim for enhanced risk of future injury, which the Kentucky Supreme Court recognized in *Davis v. Graviss*, 672 S.W.2d 928 (Ky.1984). The plaintiffs assert that Kentucky does not require proof

---

1. This case involves interstate pollution because the alleged source of the pollution is situated in Kentucky while all the plaintiffs are residents of Wayne County, West Virginia. The parties have agreed, and the court concurs, that in cases involving interstate pollution the substantive law of the state in which the source of the pollution is located governs common-law tort claims. *See International Paper Co. v. Ouellette*, 479 U.S. 481, 497–500, 107 S.Ct. 805, 814–816, 93 L.Ed.2d 883, 900–02 (1987); *accord Arnoldt v. Ashland*

*Oil, Inc.*, 186 W.Va. 394, 412 S.E.2d 795, syl. pt. 1 (1991).

2. In materials submitted to the court after it had heard oral arguments on this motion, Ashland honed its position by asserting that not only should a plaintiff have to show a present injury but he or she should also have to be currently prosecuting an action for compensation for such injury in order to recover future medical monitoring costs.

of a present injury in order to have a valid claim for enhanced risk; instead all that is required is proof to a reasonable certainty that a future complication is likely to occur. They conclude that because future medical testing is to be employed to permit early detection of a disease which they have an *enhanced risk* of suffering and because a claim for enhanced risk does not require a present injury, it logically follows that a claim for medical monitoring only requires proof of exposure to a toxic substance, rather than proof of a present physical injury. An award of the costs for such monitoring would not be speculative because plaintiffs would have to prove that they have a significantly enhanced risk of suffering future harm because of their exposure and that medical testing is reasonably necessary for early detection of such harm.

The plaintiffs' second, fallback argument is that if this court holds that Kentucky requires proof of a present physical injury in order to recover for future medical monitoring then they have alleged such injury. They posit that under Kentucky law all that is needed to establish physical injury is some *physical impact* and that they have sufficiently pleaded such physical impact.[3]

Ashland's motion to dismiss for failure to state a claim[4] is based upon its contention that Kentucky law does not recognize claims for medical monitoring.

A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

*Balistreri v. Pacifica Police Department,* 901 F.2d 696, 699 (9th Cir.1990); *see Neitzke v. Williams,* 490 U.S. 319, 326–28, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338, 348–49 (1989).

The parties agree that Kentucky does not have any statutory or decisional law concerning the question presented to this court or regarding the issue of medical monitoring in general. Therefore, the matter is one of first impression.

In cases where the state's highest court has not considered the precise question to be answered, the federal court is called upon to predict how the state court would resolve the issue should it be called upon to do so.

In making such predictions we recognize that "[t]he state's highest authority is the best authority on its own law" and that "if there be no decision by that Court then federal authorities must apply what they find to be the state law after giving 'proper regard' to the relevant rulings of other courts of that state." ... Our role is not to form or create state law but to decide the case as we believe it would have been decided by the state's highest court had the case arisen in the state court system.

*Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 378 (3rd Cir.1990) (citations omitted). *But see Ball v. Joy Manufacturing Co.,* 755 F.Supp. 1344, 1372 (S.D.W.Va.1990), *aff'd,* 958 F.2d 36 (4th Cir.1991). Because there is

---

**3.** In their post oral argument submissions to the court, plaintiffs assert that *exposure* itself to toxic substances is *physical impact.* Presumably their argument is that exposure causes subcellular changes which create an enhanced risk of future harm and that such subcellular changes are physical impact and physical injury.

**4.** Plaintiffs, in post oral argument briefs to the courts, have asserted that the defendant converted the motion to one for summary judgment, Fed.R.Civ.P. 56, by submitting certain documentary evidence to the court at oral argument. Fed.R.Civ.P. 12(b). As a consequence, plaintiffs have themselves submitted materials outside the pleadings in order to show that genuine issues of

material fact exist which preclude a grant of summary judgment.

However, the documents submitted by defendant's counsel during oral argument to the court were simply four sheets of paper which highlighted the salient points of counsel's argument. Such materials were nothing more than demonstrative aids, and like counsel's statements themselves, are not evidence of facts. Because the issue before the court is purely one of law, the court sees no relevance to the materials submitted by plaintiffs' counsel and has completely disregarded them in deciding this motion. Therefore, this Rule 12(b)(6) motion has *not* been converted to one for summary judgment.

no Kentucky case law on point, the plaintiffs have asked this court to certify the issue herein to the Kentucky Supreme Court. This court declines to take that route however.

When faced with an unsettled issue of state law, a federal court should not decline to exercise its jurisdiction to decide a case.... A federal court "may not give up—lost in darkness" in such a situation. ... [I]f a state's supreme court has not yet decided an issue, a federal court should look to available data and adopt the rule that it believes a state's supreme court would adopt.

*Heinhold v. Bishop Motor Express, Inc.*, 660 F.Supp. 382, 384 (N.D.Ind.1987) (citations omitted); *accord Meadow Limited Partnership v. Heritage Savings & Loan Ass'n*, 639 F.Supp. 643, 653 (E.D.Va.1986). This court believes that it is capable of performing this task. Therefore, the motion to certify a question will be denied.

This court, with the assistance of counsel for the parties, has found a limited number of cases dealing with future medical monitoring related to toxic pollution. A majority of the courts in these cases has allowed recovery of such costs upon proof of exposure to the toxins without requiring proof of a physical injury also. *In re Paoli Railroad Yard PCB Litigation*, 916 F.2d 829 (3rd Cir.1990) (predicting Pennsylvania law), *cert. denied sub nom. General Electric Co. v. Knight*, — U.S. —, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991); *Cook v. Rockwell International Corp.*, 755 F.Supp. 1468, 1477–78 (D.Colo. 1991); *Merry v. Westinghouse Electric Corp.*, 684 F.Supp. 847 (M.D.Pa.1988) (predicting Pennsylvania law); *Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 752 P.2d 28, 33 (Ct.App.1987); *Miranda v. Shell Oil Co.*, 7 Cal.Rptr.2d 623 (Cal.Ct.App.1992), *review granted and opinion superseded*, 10 Cal. Rptr.2d 182, 832 P.2d 898 (Cal.1992)[5]; *Ayers*

v. Township of Jackson, 106 N.J. 557, 525 A.2d 287, 312 (1987); *Gerardi v. Nuclear Utility Services, Inc.*, 149 Misc.2d 657, 566 N.Y.S.2d 1002 (N.Y.Sup.Ct.1991). The courts in these cases, noting that claims involving toxic pollution are new, non-traditional torts, *e.g., Cook*, 755 F.Supp. at 1477, have expanded the tort concept of "injury" beyond "physical injury" to also mean "invasion of a legally protected interest". *E.g., id.; Ayers*, 525 A.2d at 304. The courts in these cases have found the "injury" to be the costs of medical testing the plaintiff must undergo in an effort to detect the disease that eventually will be caused by his or her exposure to the toxic pollution. *In re Paoli*, 916 F.2d at 850 & 861; *see Miranda*, 7 Cal.Rptr.2d at 626 & 628. These courts do not allow a plaintiff to recover merely upon proof of exposure alone, however. In order to recover the costs of future diagnostic testing, each plaintiff must prove:

1. Plaintiff was significantly exposed to a proven hazardous substance through the negligent actions of the defendant.

2. As a proximate result of exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease.

3. That increased risk makes periodic diagnostic medical examinations reasonably necessary.

4. Monitoring and testing procedures exist which make the early detection of the disease possible and beneficial.

*In re Paoli*, 916 F.2d at 852; *accord Merry*, 684 F.Supp. at 850; *Miranda*, 7 Cal.Rptr.2d at 626; *Ayers*, 525 A.2d at 312–13.

In a second group, the courts have allowed recovery of future medical monitoring costs as an element of future medical expenses only upon proof of some physical injury. *Hagerty v. L & L Marine Services, Inc.*, 788 F.2d 315 (5th Cir.1986), *modified*, 797 F.2d 256 (1986); *Herber v. Johns–Manville Corp.*, 785 F.2d 79, 83 (3rd Cir.1986) (predicting

**5.** *Potter v. Firestone Tire & Rubber Co.*, 274 Cal. Rptr. 885 (Cal.Ct.App.1990), *review granted and opinion superseded*, 278 Cal.Rptr. 836, 806 P.2d 308 (Cal.1991), cited by the defendant, is not to the contrary. Despite some language in the opinion to the effect that a claim for medical monitoring requires a physical injury, 274 Cal. Rptr. at 896, the Court of Appeals held that the

plaintiffs' claims for medical monitoring should be denied because they had not proven that cancer was reasonably certain to occur. *Id.* 274 Cal.Rptr. at 897. Such a showing that a disease was reasonably certain to result from exposure to a toxin was held to be necessary in order to recover costs of future medical monitoring. *Id.*

New Jersey law); *Werlein v. United States,* 746 F.Supp. 887, 901–05 (D.Minn.1990); *Villari v. Terminix International, Inc.,* 663 F.Supp. 727, 735 (E.D.Pa.1987); *Askey v. Occidental Chemical Corp.,* 102 A.D.2d 130, 477 N.Y.S.2d 242 (1984); *see Ball v. Joy Manufacturing Co.,* 755 F.Supp. 1344, 1370–73 (S.D.W.Va.1990) (predicting Virginia and West Virginia law), *aff'd,* 958 F.2d 36 (4th Cir.1991).[6] However, the degree of injury required varied greatly among the courts. In *Askey,* the court defined the injury as "the invasion of the body by the foreign substance, with the assumption being that the substance acts immediately upon the body setting in motion the forces which eventually result in disease...." 477 N.Y.S.2d at 247. The court, however, much the same as in *In re Paoli, supra,* also required proof of the likelihood of the resultant disease and the efficacy of the medical monitoring being sought in order for a plaintiff to recover medical monitoring costs. 477 N.Y.S.2d at 247–48. The physical injury in *Werlein* was said to be "chromosomal breakage, and damage to the cardiovascular and immunal systems." 746 F.Supp. at 901. It is difficult to distinguish these two cases in any real sense from the "exposure" cases.

In *Hagerty,* the court found "[d]izziness, leg cramps, and a persistent stinging sensation in feet and fingers" after the plaintiff had been drenched by a toxic chemical as "suggest[ion] [of] some harm or injury", 788 F.2d at 317, which would permit recovery of the expense of periodic medical examinations as part of future medical damages. *Id.* at 319. The *Villari* court held that much the

same physical symptoms, 663 F.Supp. at 729, would support the award of the costs of future medical monitoring. *Id.* at 735. The Third Circuit in *Herber* upheld a jury award of the costs of future medical monitoring "as an independent element of damages", 785 F.2d at 83, because pleural thickening in plaintiff's lungs after exposure to asbestos was a "physical injury". *Id.* at 81.

Judge Hallanan of this court, in the *Ball* case, held that a plaintiff must show a present, demonstrable injury caused by the exposure to a toxin before he or she may recover the costs of future medical monitoring. 755 F.Supp. at 1370–73. In interpreting Virginia and West Virginia law, Judge Hallanan held that only "physical manifestations", rather than mere exposure, met the definition of "injury" in those states' tort law which would permit the awarding of future medical expenses. *Id.* at 1350–69. Exposure to a toxin was a "wrongful act" rather than the "injury". *Id.* at 1364–66. Finally, while recognizing the salutary purposes behind allowing the recovery of medical monitoring costs upon proof of exposure alone, Judge Hallanan opined that the adoption of such a new legal principle was up to the state courts and legislatures, not a federal court.[7] *Id.* at 1370–73.

The issues facing this court are threefold: first, would Kentucky recognize a claim for recovery of the costs of future medical testing to detect possible diseases caused by toxins; second, would Kentucky require proof of a present physical injury from, or

**6.** *Friends for All Children, Inc. v. Lockheed Aircraft Corp.,* 587 F.Supp. 180 (D.D.C.1984), *modified,* 593 F.Supp. 388 (1984), *aff'd,* 746 F.2d 816 (D.C.Cir.1984), is inapplicable to the issue before this court because that case involved immediate diagnostic testing to determine if children involved in an *airplane crash* were *presently* suffering from *behavioral or learning problems* as a result thereof.

*Schweitzer v. Consolidated Rail Corp.,* 758 F.2d 936 (3rd Cir.1985), *cert. denied sub nom. Reading Co. v. Schweitzer,* 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) and *Morrissey v. Eli Lilly & Co.,* 76 Ill.App.3d 753, 32 Ill.Dec. 30, 394 N.E.2d 1369 (1979), cited by defendant, are also inapplicable. In *Schweitzer,* the issue was when a claim for injury from exposure to asbestos accrued for

purposes of being eliminated by a discharge in bankruptcy. 758 F.2d at 941. The Third Circuit held that such a claim did not accrue until there was a manifestation of a compensable injury. *Id.* at 942.

In *Morrissy,* the issue before the Appellate Court of Illinois was the propriety of a trial court's refusal to certify a class. 32 Ill.Dec. at 36, 394 N.E.2d at 1375. Any discussion therein of what constituted an "injury" was simply dicta.

**7.** The United States District Court for the Western District of North Carolina applied the same reasoning when it refused to recognize a claim in any form for future medical monitoring. *Carroll v. Litton Systems, Inc.,* Civ. No. B–C–88–253, 1991 WL 187277 (W.D.N.C. July 15, 1991) (adopting findings and recommendations of magistrate judge, 1990 WL 312969, at *51).

merely exposure to, the toxin before entertaining such a claim; and third, would a plaintiff have to be prosecuting a claim for compensation for present injuries in order to recover for future medical monitoring? Although there is no decisional law in Kentucky on point, this court believes that there are cases which indicate the position that state's courts would take on these issues.

■ First of all, the Kentucky Supreme Court has held that a plaintiff who has suffered a physical injury because of the negligence of a tortfeasor may recover for the increased risk of future harm that might result from that injury. *Davis v. Graviss,* 672 S.W.2d 928 (Ky.1984). However, there must be substantial evidence to show that the likelihood of the occurrence of the future complication is substantial, though not necessarily probable. *Id.* at 931. Furthermore, the plaintiff in such a case can recover in a current action for the future medical expenses that he or she might incur if the future complication should occur. *City of Louisville v. Maresz,* 835 S.W.2d 889, 895–96 (Ky.Ct.App.1992).

This court believes that Kentucky's recognition of an enhanced risk claim is significant because two of the courts which have allowed recovery for future medical monitoring costs have expressly rejected recognizing claims for enhanced risk. *In re Paoli,* 916 F.2d at 850–51; *Ayers,* 525 A.2d at 304–09. *But see Werlein v. United States,* 746 F.Supp. at 901. For these courts,

> [t]he enhanced risk claim seeks a damage award, not because of an expenditure of funds, but because plaintiffs contend that the unquantified injury to their health and life expectancy should be presently compensable, even though no evidence of disease is manifest. . . .
>
> By contrast, the claim for medical surveillance does not seek compensation for an unquantifiable injury, but rather seeks specific monetary damages measured by the cost of periodic medical examinations.

*Ayers,* 525 A.2d at 304; *accord In re Paoli,* 916 F.2d at 850. Those courts rejected awarding damages for enhanced risk because both the injury itself and the compensation therefor were too speculative. 916 F.2d at

850–51; 525 A.2d at 307–09. However, they did not consider an award for future medical monitoring to be speculative. *Id.* As the Third Circuit said in *In re Paoli,*

> [t]he injury in an enhanced risk claim is the anticipated harm itself. The injury in a medical monitoring claim is the cost of the medical care that will, one hopes, detect that injury. The former is inherently speculative because courts are forced to anticipate the probability of future injury. The latter is much less speculative because the issue for the jury is the less conjectural question of whether the plaintiff needs medical surveillance.

916 F.2d at 850–51 (footnote omitted).

Given that the Kentucky Supreme Court has taken the broader step of allowing recovery of damages in enhanced risk claims, *Davis, supra,* it is far easier to predict that that court would take the lesser step of allowing recovery in so-called medical monitoring claims. The court reaches this conclusion because an award for future medical monitoring is essentially an award for medical costs which *will be* incurred in an effort for early detection of latent diseases which a plaintiff has an enhanced risk of suffering. It is no more speculative than the recovery allowed in *Maresz.* A plaintiff seeking such medical monitoring costs in a toxic pollution case of course would have to present substantial evidence of the need for such monitoring. *See Davis,* 672 S.W.2d at 922.

■ Most of Ashland's argument for dismissal has concerned itself with the second inquiry; whether a plaintiff must allege a present physical injury before he or she may seek to recover medical monitoring costs. To support its contention that Kentucky courts would require a present, demonstrable physical injury, Ashland relies heavily on the statement by the Kentucky Supreme Court that "[t]he right of action for negligence causing injury or death . . . requires more than mere conduct before recovery can be attempted. Recovery is not possible until a cause of action exists. A cause of action does not exist until the conduct causes injury that produces loss or damage." *Saylor v. Hall,* 497 S.W.2d 218, 225 (Ky.1973); *accord*

*Louisville Trust Co. v. Johns–Manville Products Corp.,* 580 S.W.2d 497, 500 (Ky. 1979). The statement needs to be put into context, however. In both *Louisville Trust Co.* and *Saylor,* the Kentucky Supreme Court was discussing when a cause of action for personal injury *accrued.* Furthermore, the quoted statement is incomplete. In *Saylor,* the court went on to say that "[t]he action for negligence ... has always retained the rule ... that *proof of damage* was an essential part of the plaintiff's case." 497 S.W.2d at 225 (emphasis added). In the *Louisville Trust Co.* case, the court, while citing the last sentence in the quoted statement, also said that "[a]n action accrues only at the time the plaintiff suffers an actionable wrong." 580 S.W.2d at 500.

In the case of *Deutsch v. Shein,* 597 S.W.2d 141 (Ky.1980), the court used the term "injury" to mean the damage or loss that flowed from an actionable wrong, which it in turn referred to as the "harm".[8] *Id.* at 145. Ashland's asserted principle could therefore be restated as "a cause of action does not exist until the conduct violates some legal right (or causes harm) that produces loss or damage (injury)." Therefore, this court does not believe that the *Saylor* and *Louisville Trust Co.* cases stand for the proposition advanced by Ashland that the term "injury" in Kentucky law always means "present, demonstrable physical injury."

The case of *Deutsch v. Shein,* 597 S.W.2d 141 (Ky.1980), is further instructive on this point. The plaintiff in that case was found to be entitled to recover damages for physical and mental pain and suffering because she obtained a therapeutic abortion after the defendant physician had negligently subjected her to x-ray examinations during the early term of her pregnancy without first determining whether of not she was pregnant. Plaintiff obtained the abortion after being informed by her obstetrician/gynecologist that the x-ray examinations posed a serious

risk of injury to the fetus and after being advised by her pediatrician that an abortion was "medically indicated." *Id.* at 143. The Kentucky Supreme Court found the irradiation of plaintiff's body to be sufficient "trauma," 597 S.W.2d at 143, or "harm," *id.* at 145, to support an award of damages. This court is convinced that the *Deutsch* case, along with the enhanced risk cases of *Davis* and *Maresz* discussed *supra* at 535, show that Kentucky does not always require a plaintiff to prove a *demonstrable* physical injury in order to recover damages.

■ That does not mean that Kentucky would allow recovery of medical monitoring costs on proof of *exposure* alone however. It is apparent that the Kentucky Supreme Court requires proof of *some* present physical harm, however slight, before a plaintiff may recover compensation. *See Deutsch, supra.* Proof of such harm, as well as proof of the need for future medical monitoring as discussed *supra* at 536, could likely be made by showing that:

1. Plaintiff was *significantly* exposed to a *proven* hazardous substance through the ... actions of the defendant [;]

2. As a proximate result of exposure, plaintiff suffers a *significantly* increased risk of contracting a *serious* latent disease [;]

3. That increased risk makes periodic medical examinations reasonably necessary [; and,]

4. Monitoring and testing procedures exist which make the early detection *and* treatment of the disease possible *and beneficial.*

*In re Paoli,* 916 F.2d at 852 (emphasis added). Such proof should remove the questions of the existence of an injury and the need for medical testing from the realm of speculation and also limit the availability of the remedy to a determinable universe of plaintiffs.[9]

---

**8.** Long ago, the Kentucky Supreme Court, in discussing the term "injury", said that "[a] legal injury must be a violation of some legal right, and is distinct in meaning from the damage that may flow from the injury ... *'injury' means a wrong or a tort,* and that ... may arise by nonfeasance or failure to perform a legal obligation or duty." *Combs v. Hargis Bank & Trust Co.,* 234 Ky. 202, 27 S.W.2d 955, 956 (1930) (emphasis added).

**9.** This court in principle generally agrees with the authorities cited in this opinion which do not permit recovery of damages for so-called medical

■ Ashland's final contention is that each plaintiff seeking to recover the costs of future medical monitoring must be currently prosecuting a claim for compensation for present injuries. In other words, defendant asserts that there cannot be an award for future damages without a concomitant award of damages for present injuries. Presumably such a requirement is intended to prevent an award of speculative claims.

This court has not found any Kentucky law establishing the requirement proposed by Ashland. Kentucky already allows the recovery for enhanced risk of future injury, *Davis, supra,* and the future medical expenses a plaintiff with such an increased risk *might incur. Maresz, supra.* That state's courts apparently do not consider such claims too speculative. Given the level of proof this court has predicted Kentucky courts would require in order to establish harm from toxic exposure and the enhanced risk created thereby and to establish the necessity of future medical examinations, this court cannot discern the purpose for requiring a plaintiff to also be seeking compensation for present manifest physical injuries. The very essence of toxic exposure cases is the contention that physical injuries therefrom are presently indiscernible; instead the effects are latent. To require a plaintiff to assert a potentially nonviable claim to recover for such presently indiscernible injuries in order to be able to assert a claim for future medical monitoring would amount to elevating form over substance.

For the reasons set forth in this memorandum opinion, it is ORDERED that the defendant's motion to dismiss plaintiffs' claims for medical monitoring as a matter of law be, and the same hereby is, OVERRULED and DENIED.

monitoring rather than with those who do so. However, for the reasons stated in this opinion, this court feels itself well-nigh ineluctably constrained to predict that the Kentucky Supreme

Court would permit recovery of such damages if that court was called upon to decide this issue raised herein.